658 A.2d 1252

AHMED N. AKEF, PETITIONER–RESPONDENT, v. BASF CORPO-RATION, CHEMO DYNAMICS, INC. AND THE SECOND INJU-RY FUND, RESPONDENTS–RESPONDENTS, AND CELOTEX CORPORATION, RESPONDENT–APPELLANT.

Argued May 2, 1995—Decided June 13, 1995.

*John C. Garde* argued the cause for appellant (*McCarter & English,* attorneys; *Michael A. Tanenbaum,* of counsel; *Mr. Garde* and *Debra M. Perry,* on the briefs).

*David Tykulsker* argued the cause for respondent Ahmed N. Akef (*Ball, Livingston & Tykulsker,* attorneys).

*John J. Jasieniecki* argued the cause for respondent BASF Corporation (*Thomas H. Green,* attorney).

*Gerald D. Rotella* argued the cause for respondent Chemo Dynamics, Inc. (*Cunneen and Rotella,* attorneys).

*Nancy J. Shebell,* Deputy Attorney General, submitted a statement in lieu of brief on behalf of respondent Second Injury Fund (*Deborah T. Poritz,* Attorney General of New Jersey, attorney; *Mary C. Jacobson,* Assistant Attorney General, of counsel).

PER CURIAM.

This case presents the issue of whether an employee's material misrepresentation of a preexisting medical condition bars a claim for worker's compensation. The Judge of Compensation found that the reliance by the employer on the employee's purposeful and knowing misrepresentation bars the employee from seeking a worker's compensation award for an occupational disease that was the subject of such misrepresentations. The Appellate Division, in a reported decision by Judge Dreier, reversed. 275 *N.J.Super.* 30, 645 *A.*2d 158 (1994).

We affirm the judgment of the Appellate Division substantially for the reasons set forth in Judge Dreier's opinion.

The legal and social significance of an employee's material misrepresentation concerning an existing medical condition is most difficult to evaluate in the context of a comprehensive statutory scheme to compensate workers for employment-related injuries. The facts that give rise to this issue illuminate competing policy concerns and considerations that implicate the purposes of our workers' compensation laws. The weighing and resolution of those matters of policy are appropriately remitted to the judgment of the Legislature.

The record discloses that on October 24, 1977, petitioner Ahmed Akef began employment as a "process development chemist" with BASF Corporation. He remained in that job until June 23, 1986. During the course of his employment at BASF, petitioner was exposed to "dozens, if not hundreds" of toxic solvents and chemicals. Due to common spills and leaks, fumes were routinely generated from chemical reactions. Ventilation was poor in the BASF plant.

Petitioner began having respiratory problems and complained of tightness in his chest as early as 1981. He was prescribed inhalers and a bronchodilator. Petitioner was also prescribed medication to alleviate his condition. He received additional medical care for his condition in 1983 and 1986.

In 1986, petitioner left BASF, and commenced employment at a temporary agency, Lab Support, Inc., where he was assigned employment as a chemist with Chemo Dynamics. He worked at Chemo Dynamics from January 26 until February 15, 1987. While employed, he was exposed to hazardous materials in poorly ventilated rooms.

On January 5, 1987, petitioner filed a claim for Worker's Compensation against BASF. His injuries were characterized as neurological, pulmonary, internal, reproductive, and neuropsychiatric. On March 17, 1987, that claim was denied, apparently "without findings." 275 *N.J.Super.* at 45, 645 *A.2d* 158.

From August 10, 1987 until May 4, 1988, petitioner was employed as a security guard with Celotex Corporation. Celotex manufactures roof shingles. The manufacturing process generates hazardous dust and fumes. When applying for the position at Celotex, petitioner did not disclose his previous employment history as a chemist. Instead, he stated that he had worked as an assistant manager of a food store from 1973 to 1987. He did not acknowledge having ever worked for BASF or Chemo Dynamics, nor did he respond to questions on a medical questionnaire that inquired about prior illness or medical conditions. Petitioner also did not disclose his previous health problems to the Celotex doctor that examined him for his pre-employment physical. However, petitioner did inform the doctor that he had asthma as a child, and experienced occasional shortness of breath. The doctor found no limiting conditions, and recommended employment. After working at Celotex for nine months, during which time he was exposed to hazardous dust and fumes, petitioner was hospitalized for acute bronchial asthma. Thereafter, petitioner was rendered totally disabled. He was hospitalized for his condition numerous times between 1990 and 1992. Although he has one child, Akef is now sterile.

I

The Judge of Compensation determined that petitioner had suffered a disabling occupational disease. Referring to petitioner's material misrepresentation, however, the court barred his claim, reasoning that Akef should not be allowed to profit from his own dishonesty.

The Workers Compensation Act, *N.J.S.A.* 34:15–1 to –128, deals specifically with the defenses that are applicable to claims for compensation for employment-related injury or occupational disease.

*N.J.S.A.* 34:15–7 specifies three statutory defenses to an employee's claim for elective compensation based on a work-related injury. The first is where "the injury or death is intentionally

self-inflicted, or when intoxication or the unlawful use of controlled dangerous substances ... is the natural and proximate cause of injury or death." The second is willful failure by the employee "to make use of a reasonable and proper personal protective device or devices furnished by the employer" where the device has "been clearly made a requirement of the employee's employment ... and uniformly enforced." The third is where the injury was occasioned by "recreational or social activities" that were not "a regular incident of employment" and did not "produce a benefit to the employer beyond improvement in employee health and morale."

The statute also prescribes defenses to a workers' compensation claim based on an occupational disease. *N.J.S.A.* 34:15–30 provides such a defense where "the injury or death by occupational disease is caused by willful self-exposure to a known hazard." It also authorizes a defense where such injury or death was caused "by the employee's willful failure to make use of a reasonable and proper guard or personal protective device furnished by the employer which has been clearly made a requirement of the employee's employment by the employer."

The Appellate Division noted that the statutory defenses to claims for workers' compensation operate as exceptions to the entitlement to a compensation award based on a work-related injury or occupational disease. 275 *N.J.Super.* at 36–37, 645 *A.*2d 158. The specific statutory defenses were enumerated in the comprehensive revision of the Workers' Compensation Act in 1979, and, as pointed out by the Appellate Division, "a statutory misrepresentation defense" was "not include[d]." *Id.* at 43, 645 *A.*2d 158. In considering the availability of the defense of material misrepresentation, the appellate court canvassed the statutory and decisional law of other jurisdictions. *Id.* at 37–41, 645 *A.*2d 158. It duly noted the varying rules and approaches with respect to whether an affirmative defense of material misrepresentation may be recognized to defeat a claim for workers' compensation. It pointed out that some states have adopted the defense by statute;

others have implied the defense as a matter of "common law," frequently applying the so-called "Larson Test," explained at IC Larson's *Workmen's Compensation Law*, § 47.53, at 8–393 to 8–404 (1986). *Id.* at 38–40, 645 *A.*2d 158. Several jurisdictions, however, have refused to imply the material misrepresentation defense in the absence of express statutory authority. *Id.* at 40–41, 645 *A.*2d 158.

The Appellate Division considered the major reasons advanced by those courts that reject the implication of an affirmative defense of misrepresentation. Stressing that "the Workers' Compensation Act [is] to be liberally construed in favor of the claimant," *id.* at 44, 645 *A.*2d 158, and citing *Squeo v. Comfort Control Corp.*, 99 *N.J.* 588, 596–97, 494 *A.*2d 313 (1985), it found those reasons to comport with the policies underlying our workers' compensation laws. *Id.* at 43, 645 *A.*2d 158. Because the statute provides "enumerated exceptions" to compensation claims, the Appellate Division concluded that the specific statutory enumeration of affirmative defenses "indicates a legislative intent that the statute be applied to all other cases not specifically excepted." (citations omitted). *Id.* at 44, 645 *A.*2d 158.

The Legislature expressly and clearly specified by statute the defenses that are available against a worker's compensation claim. Because the statute does not specify a material misrepresentation as a defense, it is reasonable to impute to the Legislature the intent not to recognize a material misrepresentation as a bar to the award of workers' compensation. Accordingly, the Appellate Division declined to recognize a new defense to worker's compensation claims based on material misrepresentations.

## II

The Compensation Judge found that no expert expressed the opinion that the petitioner's pulmonary disease had been diagnosed or discovered prior to petitioner's employment with Celotex. The Judge of Compensation exonerated BASF and Chemo Dynamics from liability for the worker's compensation claim attribut-

able to the acute bronchial asthma, concluding that on the record the disease was diagnosed and became disabling only during the period of petitioner's final employment, and, therefore, the last employer, Celotex, should be liable.

The Judge of Compensation based his disposition on *Bond v. Rose Ribbon & Carbon Mfg. Co.*, 42 *N.J.* 308, 200 *A.*2d 322 (1964). That case held that a petitioner's claim for a cumulative occupational disease was properly brought against the employer during whose employment the disease is disclosed "by medical examination, work incapacity, or manifest loss of physical function." *Id.* at 311, 200 *A.*2d 322. The Compensation Judge here concluded that Celotex, petitioner's final employer, satisfied that test. The Appellate Division agreed.

The basic principle expressed in *Bond* has endured. We recognize that a disability may be allocated to an employer when it has become "fixed, arrested and definitely measurable." *Giagnacovo v. Beggs Bros.*, 64 *N.J.* 32, 38, 311 *A.*2d 745 (1973). When there is evidence that a condition underlying a disability was obvious, diagnosable and capable of measurement, compensation for the resultant disability should be apportioned to or among those employers or the Second Injury Fund to cover the periods of prior employments during which the underlying condition was discoverable and measurable. *See Gulick v. H.M. Enoch, Inc.*, 280 *N.J.Super.* 96, 110–11, 654 *A.*2d 987 (App.Div.1995); *see also Fiore v. Consolidated Freightways*, 140 *N.J.* 452, 659 *A.*2d 436 (1995) (recognizing that an occupational disease caused in part by non-employment conditions resulting in prior functional loss may be subject to apportionment under *N.J.S.A.* 34:15–12d).

The Appellate Division here noted that although "[p]etitioner's condition was primarily caused by his employment at BASF," the Compensation Judge found that "his expert witness could not definitively apportion the percentage of disability to the respective employments." 275 *N.J.Super.* at 44–45, 645 *A.*2d 158. *See Gulick, supra,* 280 *N.J.Super.* at 110, 654 *A.*2d 987 (observing that if the underlying "condition was not discovered or had not reached

'a compensable stage' prior to the last employment," it would not be allocable to that employer) (quoting *Giagnacovo, supra*, 64 *N.J.* at 37–38, 311 *A.*2d 745).

The Appellate Division thus reasoned that there was an adequate basis for the Judge of Compensation to conclude that liability for compensation for petitioner's permanent disability based on the occupational pulmonary disease, the acute bronchial asthma and its associated psychiatric disabilities, would be solely the responsibility of the last employer, and not be subject to apportionment between or among previous employers or the Second Injury Fund. The Appellate Division, further, determined that petitioner "proved a claim for his azoospermia and associated psychiatric disability for which BASF appears solely responsible," and reversed the dismissal of those claims against BASF. 275 *N.J.Super.* at 45–46, 645 *A.*2d 158. We find no reason to disturb the determinations of the lower court.

### III

The judgment of the Appellate Division is affirmed.

*For affirmance*—Chief Justice WILENTZ, and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI, STEIN and COLEMAN—7.

*Opposed*—None.