729 A.2d 1006

NANCY WILSON, PLAINTIFF–APPELLANT, v. WAL–MART STORES, D/B/A SAM'S CLUB; K–MART STORES, D/B/A PACE MEMBERSHIP WAREHOUSE, DEFENDANTS–RESPONDENTS, AND ROCCO GALLO, INDIVIDUALLY, JOINTLY AND IN THE ALTERNATIVE, DEFENDANT–RESPONDENT.

Argued November 30, 1998—Decided May 3, 1999.

264

*John W. Trimble, Sr.,* argued the cause for appellant.

*Brian D. Sullivan* argued the cause for respondent Wal–Mart Stores, d/b/a Sam's Club (*Roberts & Finger,* attorneys; *Joel L. Finger,* of counsel).

*Brian D. Sullivan* argued the cause for respondent Wal–Mart Stores, d/b/a Sam's Club (*Roberts & Finger,* attorneys; *Joel L. Finger,* of counsel).

The opinion of the Court was delivered by

O'HERN, J.

This is an employment-practices claim under New Jersey's Law Against Discrimination (LAD), *N.J.S.A.* 10:5–1 to –49. The plaintiff, a forty-nine-year-old woman, seeks redress for sexual harassment and for age and sex discrimination in the workplace. She first brought an action before the Division of Civil Rights (DCR) against Wal–Mart Stores (Wal–Mart). Through no fault of her

own, the action languished there. Just before the statute of limitations was to expire, she filed this complaint in the Superior Court against Wal–Mart and her predecessor employer, K–Mart Stores (K–Mart). She then withdrew her administrative action. The Appellate Division dismissed her LAD complaint on the basis that she had not withdrawn her administrative action prior to filing the Superior Court action. Because the two-year statute of limitations has passed, the dismissal deprives her of any remedy for the vindication of her rights. *N.J.S.A.* 10:5–27 states that "[t]he [administrative] procedure herein provided shall, while pending, be exclusive; and the final determination therein shall exclude any other action, civil or criminal, based on the same grievance of the individual concerned." The principal issue in this appeal is whether that exclusivity provision is a jurisdictional bar to the filing of the protective complaint in the Law Division or whether the Law Division has jurisdiction over a LAD claim when its further prosecution requires dismissal of the administrative action.

The secondary question is whether the claim against K–Mart is barred by the statute of limitations because it was not brought within two years of the last date of plaintiff's employment with K–Mart. That question requires consideration of the problem of successor liability when both predecessor and successor employers are alleged to have contributed to the creation of a hostile work environment. Resolution of that issue hinges in part on the continuing tort doctrine and whether the discriminatory conduct began before the succession and continued until the worker's termination. Because the record does not establish adequately the relationship between the successor enterprises, we remand that issue for consideration after further development of the record.

I

In August 1990, K–Mart hired plaintiff Nancy Wilson as a sales representative in one of its subsidiaries, a Pace Membership

Warehouse (Pace). Pace is a form of a "big-box" store where merchandise is sold in bulk. The setting is like that of a warehouse—rough and tumble. In May 1992, plaintiff was transferred to a different Pace store in Freehold and promoted to warehouse marketing manager, a salaried position. During her employment at the Freehold location, Rocco Gallo supervised plaintiff. On January 10, 1994, K–Mart sold the assets of the Freehold store to Wal–Mart. Gallo and plaintiff continued to work at the Freehold store, which became known as Sam's Club.

Because this case arises on a motion for dismissal, we must accept the facts as alleged by plaintiff. According to Wilson, her new position in Freehold was the "best job she ever had" in terms of compensation and potential advancement. Because she cherished this job, she endured Gallo's crude and indecent remarks, which began after her 1992 transfer to Freehold and while K–Mart ran the warehouse store. On March 1, 1994, some months after Wal–Mart took over the store, Gallo approached Wilson and asked her if she was wearing a brassiere. She said that she had not worn one in years. Gallo told Wilson either to begin wearing a brassiere or face termination. Wilson refused to wear a brassiere. The following day Gallo told Wilson to disregard the previous day's conversation. On March 4, 1994, Wal–Mart terminated Wilson. Wal–Mart replaced plaintiff with a male who was eleven years younger than plaintiff, but had a four-year marketing degree and ten years of marketing experience.

According to Wal–Mart, Wilson was not "laid off"; rather, her departure was based on a restructuring decision made after the January 1994 merger. Wal–Mart contends that the employment decision was based on valid business considerations other than a dress code for women and, further, that Wilson never expressed any complaints to Wal–Mart concerning harassment, noting that Wal–Mart had not maintained her personnel file prior to January 1994.

Within three months of her March 1994 termination, Wilson filed a *pro se* complaint with the DCR alleging that Wal–Mart

discriminated against her on the basis of her age and sex. She did not name K–Mart as a party. Plaintiff hired an attorney, who filed an appearance with the DCR in August 1994. He and his client were unable to attend an initial fact-finding conference that was eventually postponed.

Plaintiff's attorney contacted the DCR investigator assigned to this case to find out when a new fact-finding conference would be scheduled. The attorney left a voice mail message requesting that the investigator return his call. Again, on October 19, October 26 and November 13, 1995, the attorney telephoned the investigator and left a message, but no action was taken. On November 13, 1995, the attorney also sent a letter to the investigator in an effort to determine the reason for the delay in scheduling a fact-finding conference. In that letter, the attorney mentioned his concern that Wilson could lose her "other rights" because of the statute of limitations running on her wrongful discharge claim. When the attorney finally reached the investigator on November 13, 1995, the investigator was unable even to estimate when the conference would be scheduled because of the "complete backlog" of work in the DCR.

On March 4, 1996, exactly two years after being terminated, plaintiff filed a civil action under LAD and named Wal–Mart, K–Mart, and Rocco Gallo as defendants. Plaintiff withdrew her complaint from the DCR on May 13, 1996. At that time, the DCR had not held a hearing or rendered any decision regarding the matter. K–Mart and Wal–Mart filed motions for summary judgment based on the LAD's exclusivity provision, *N.J.S.A.* 10:5–27. K–Mart also asserted that plaintiff's claim was barred by the two-year statute of limitations and because K–Mart had not been plaintiff's employer when she was terminated by Wal–Mart. After the trial court denied K–Mart's and Wal–Mart's motions for summary judgment, the Appellate Division reversed and remanded the matter for entry of judgment in favor of defendants. Gallo was not a party to this appeal. The Appellate Division concluded that plaintiff's complaint should be dismissed because she had

failed to withdraw her DCR complaint before filing her complaint in the Superior Court, and further, that plaintiff's claim against K–Mart was time-barred because it was not filed within two years of employment with K–Mart.

## II

### A. The LAD

New Jersey has a clear public policy to abolish discrimination in the workplace. *Fuchilla v. Layman*, 109 *N.J.* 319, 334, 537 *A.*2d 652, *cert. denied sub nom. University of Medicine and Dentistry of New Jersey v. Fuchilla*, 488 *U.S.* 826, 109 *S.Ct.* 75, 102 *L.Ed.*2d 51 (1988). LAD's primary goal is to "eradicat[e] the cancer of discrimination." *Ibid.* (quoting *Jackson v. Concord Co.*, 54 *N.J.* 113, 124, 253 *A.*2d 793 (1969)). Because discrimination in the workplace does not affect only the aggrieved party, the "public interest in a discrimination-free workplace infuses the inquiry." *Id.* at 335, 537 *A.*2d 652 (citing *David v. Vesta Co.*, 45 *N.J.* 301, 327, 212 *A.*2d 345 (1965)).

When LAD was enacted in 1945, it explicitly provided only an administrative remedy. *L.* 1945, *c.* 169, § 26; *see also Shaner v. Horizon Bancorp.*, 116 *N.J.* 433, 436, 561 *A.*2d 1130 (1989). Although courts had found an implied judicial remedy, the express right to pursue a judicial remedy under the LAD did not exist until 1979. *L.* 1979, *c.* 404, § 12; *see also Shaner, supra*, 116 *N.J.* at 440, 561 *A.*2d 1130 (discussing *N.J.S.A.* 10:5–13, which states in part that "[p]rosecution of such suit in Superior Court under this act shall bar the filing of a complaint with the division or any municipal office during the pendency of any such suit.").

The Legislature expressly confirmed the alternative enforcement mechanism to assist the DCR in reducing the DCR's "costs and backlog of cases." *Shaner, supra*, 116 *N.J.* at 442, 561 *A.*2d 1130 (citing Governor Byrne's Statement on Signing S–3101 (*L.* 1979, *c.* 404, § 1)). Although plaintiffs are afforded a choice of forums, judicial relief under the LAD "is wholly comparable to and

is at least as broad and far-reaching as that which is available in administrative actions under the LAD." *Id.* at 446, 561 *A.*2d 1130.[1]

In choosing the DCR as a forum, a complainant is "availing himself [or herself] of a means of redress normally swifter and less expensive than formal litigation." *Sprague v. Glassboro State College,* 161 *N.J.Super.* 218, 226, 391 *A.*2d 558 (App.Div.1978). When that means of redress fails to achieve those goals, an injured party is entirely free to proceed in Superior Court. Once a plaintiff elects the administrative remedy, however, that proceeding "shall, while pending, be exclusive...." *N.J.S.A.* 10:5-27. Although these remedies are "complementary" but "mutually exclusive," a pending complaint before the DCR may be withdrawn at any time provided that the DCR has not made a final determination. *See Hernandez v. Region Nine Hous. Corp.,* 146 *N.J.* 645, 652, 656, 684 *A.*2d 1385 (1996); *Aldrich v. Manpower Temp. Servs.,* 277 *N.J.Super.* 500, 504–05, 650 *A.*2d 4 (App.Div.1994), *certif. denied,* 139 *N.J.* 442, 655 *A.*2d 445 (1995). Election of remedies under *N.J.S.A.* 10:5-27 of the LAD, however, is not the same as claim preclusion. *Aldrich, supra,* 277 *N.J.Super.* at 504, 650 *A.*2d 4.

Unlike the plaintiff in *Aldrich, id.* at 506, 650 *A.*2d 4, Nancy Wilson failed to withdraw her DCR complaint before filing the Superior Court complaint. Defendant asserts that because plaintiff's action was pending before the DCR and she failed to withdraw that complaint, plaintiff should not be permitted to pursue her LAD action.

## B. Exclusivity Provision

We disagree that the exclusivity provision was intended to have that effect. It would be a paradox if a legislative scheme intended to increase the choice of remedies for victims of discrimi-

---

[1] Accordingly, in *Shaner,* the Court found that the Legislature did not expressly or impliedly "create a conventional action at law" or "confer the right to a jury trial when it amended the LAD to permit a judicial remedy." 116 *N.J.* at 446, 561 *A.*2d 1130. The Legislature subsequently afforded a right to a jury trial in LAD cases. *N.J.S.A.* 10:5-13, *L.* 1990, *c.* 12, § 2.

nation had the unintended consequence of leaving a LAD complainant remediless. Defendants acknowledge that if Nancy Wilson had withdrawn her DCR complaint on March 3, 1994, she would have been able to proceed in the Superior Court. Conversely, defendants argue that if she had withdrawn her DCR complaint two days later, her complaint would have to be dismissed. We very much doubt that is the meaning of either the exclusivity or election-of-forum provisions. *N.J.S.A.* 10:5–27 is not a statute of limitations that by its nature must provide arbitrary results.

■ *N.J.S.A.* 10:5–27 basically seeks to prevent parties from having "a second bite at the apple" by pursuing the alternative route to relief. *Ferrara v. Tappan Co.,* 722 *F.Supp.* 1204, 1205 (D.N.J.1989). It seeks to prevent duplication of efforts and forum shopping. Although plaintiff failed to withdraw her DCR complaint before filing in Superior Court, her complaint is not barred by *N.J.S.A.* 10:5–27. The purposes of the provision were not thwarted. The DCR had done nothing other than docket the case; it was not actively investigating the complaint or expending resources. More importantly, as in *Aldrich, supra,* no administrative ruling had been rendered. Similarly, defendants have not expended additional resources or conducted discovery and, more importantly, would not be unfairly disadvantaged by being required to litigate this matter in Superior Court. Had plaintiff not promptly withdrawn the DCR action, the familiar common-law defense of "other action pending" would have quickly confined the dispute to one forum. *Gilles v. Ware,* 615 *A.*2d 533 (D.C.1992). This interpretation is faithful to the words of the Act. It construes the LAD "fairly and justly with due regard to the interests of all the parties." *N.J.S.A.* 10:5–27. To hold otherwise would deprive Nancy Wilson of a single bite at the apple.

III

Continuing Tort—Successor Business Liability

The more subtle and demanding question is when the statute of limitations begins to run on a hostile-work-environment sexual

harassment claim in the context of successor-business enterprises, each of which has contributed to the creation of a hostile environment.[2] K–Mart contends that any claim for sexual harassment against it must have been brought within two years of the change in ownership that occurred on January 10, 1994.

■ When an individual is subject to a continual, cumulative pattern of tortious conduct, the statute of limitations does not begin to run until the wrongful action ceases. *See, e.g., Cyrus v. Nero,* 546 *N.E.*2d 328, 331 (Ind.Ct.App.1989) (discussing continuing tort doctrine). Although some jurisdictions have asserted that the continuing tort doctrine should be applied broadly as a rule of equitable tolling, no consensus exists regarding whether the rule is one of accrual or of tolling. James R. MacAyeal, *The Discovery Rule and the Continuing Violation Doctrine as Exceptions to the Statute of Limitations for Civil Environmental Penalty Claims,* 15 *Va. Envtl. L.J.* 589, 623–24 (1996).

In *Smith v. Tandy Corp.,* the court refused to expand the doctrine to harassment claims because the plaintiff "was fully aware of the tortious acts …, and she certainly could have filed the suit within the two-year limitations period." 738 *F.Supp.* 521, 523 (S.D.Ga.1990). On the other hand, the Supreme Court of Louisiana recognizes that "it is the cumulation of acts and conduct, and the resulting cumulation of damages, that transforms the individual incidents of harassment into an actionable tort." *Bustamento v. Tucker,* 607 *So.*2d 532, 540 (La.1992). The court noted that

> hostile environment claims are often based on continuing violations because "[i]n a hostile environment, an individual feels constantly threatened even in the absence of constant harassment." … A logical corollary is that once a pattern of

---

[2] In this discussion we assume that the post-*Montells* two-year period of limitation will apply to the claims for economic and non-economic issues. *Montells v. Haynes,* 133 *N.J.* 282, 294–95, 627 A.2d 654 (1993). In creating that rule, we held that the two-year rather than the six-year statute of limitations period would apply prospectively only, to those instances in which the "operative facts" arose after the date of the decision, July 27, 1993. *Id.* at 298, 627 A.2d 654.

harassment has created a psychologically offensive work environment, the status quo of such continuous wrongful conduct can be based on the harasser's mere presence.

[*Id.* at 541 (internal citations omitted).]

Consequently, the court held that in an emotional distress claim stemming from sexual harassment, "when the acts or conduct are continuous on an almost daily basis, by the same actor, of the same nature, and the conduct becomes tortious and actionable because of its continuous, cumulative, synergistic nature," the statute of limitations period does not commence until the final act has occurred or the conduct has ceased. *Id.* at 542; *see also Paine v. Department of Mental Health Servs.*, No. C–92–2953–SC, 1995 WL 56588 at *6 (N.D.Cal. Feb.7, 1995) (noting that "sexual harassment can involve a series of acts which only cumulatively alert one to a legitimate claim for sexual harassment."); *Hubbard v. United Press Int'l, Inc.*, 330 *N.W.*2d 428, 440 n. 11 (Minn.1983) (finding continuing violation "when the discriminatory acts of an employer over a period of time indicate a systematic repetition of the same policy and constitute a sufficiently integrated pattern to form, in effect, a single discriminatory act."); *Cyrus, supra,* 546 *N.E.*2d at 331 (observing that when wrong is continual, "statute of limitations is tolled so that it does not commence running until the wrongful act ceases."); *Collins v. Willcox, Inc.*, 158 *Misc.*2d 54, 600 *N.Y.S.*2d 884, 886 (Sup.Ct.1992) (recognizing that continuing sexual harassment claim's aggregate effect can give rise to a claim of emotional distress). Thus, a significant number of courts recognize that the cumulative effect of a series of discriminatory or harassing events represents a single cause of action for tolling purposes and that the statute of limitations period does not commence until the date of the final act of harassment.

Our Appellate Division has reached a similar conclusion. *See Terry v. Mercer County Bd. of Chosen Freeholders*, 173 *N.J.Super.* 249, 253, 414 *A.*2d 30 (App.Div.1980) (relaxing filing requirement under *N.J.S.A.* 10:5–18 of LAD, which requires that complaint be filed in DCR within 180 days of alleged tortious conduct, "[i]f the discriminatory conduct can be said to constitute a continu-

ing violation ....") (citations omitted), *modified by*, 86 *N.J.* 141, 430 *A*.2d 194 (1981).

In this case, the relevant final date of harassment is March 4, 1994, the day when Wal–Mart terminated Wilson. If plaintiff can demonstrate that Gallo's discriminatory conduct represents a continuum of harassment that began prior to January 10, 1994, while both were employed by K-mart, and continued through March 4, 1994, when Wal–Mart/Gallo terminated plaintiff, her claim against K–Mart may not be extinguished. Her complaint filed on March 4, 1996 may have been timely because it was filed within two years of the last act of continuous harassment.

Obviously, that conclusion raises difficulties. Because the claim of sexual harassment (if viewed as a continuing tort) is indivisible, it would be unfair to require Wal–Mart or K–Mart to pay all of the damages. An allocation of damages would be required. Although difficult, the allocation issues are not unmanageable. *See Olah v. Slobodian*, 119 *N.J.* 119, 131–34, 574 *A*.2d 411 (1990) (discussing allocation of damages between pre-existing and new causes of harm). In some circumstances, a successor will be held liable as a matter of law for the employment discrimination of a predecessor. *See Musikiwamba v. ESSI, Inc.*, 760 *F*.2d 740, 750 (7th Cir.1985) (describing nine factors for determining whether successor corporation is liable for civil rights violation of predecessor); *but see Forde v. Kee Lox Mfg. Co.*, 584 *F*.2d 4, 5–6 (2d Cir.1978) (finding no substantial continuity of identity before and after change); *cf. Akef v. BASF Corp.*, 140 *N.J.* 408, 415–16, 658 *A*.2d 1252 (1995) (holding that to apportion liability to prior employer in context of workers' compensation, plaintiff must demonstrate that underlying condition was discoverable and measurable). In other contexts, we have considered significant the allocation that the parties themselves have made for successor and predecessor liabilities. *See Mettinger v. Globe Slicing Mach. Co.*, 153 *N.J.* 371, 386, 390–91, 709 *A*.2d 779 (1998) (holding it is not unfair for distributor of defective product to maintain action for indemnification against successor to product-line manufacturer).

■ If the parties have provided for predecessor/successor liability for employment discrimination claims, the trial court should give effect to such provisions and simply explain to the jury that the parties have agreed on the issues of allocation and that it should return a single sum of damages for the injury for any period of sexual harassment that it finds compensable.[3] If the parties have not made provision for such allocation of liabilities, the factfinder may be requested to apportion the single sum of damages between the wrongdoers on each of the theories of liability claimed. Obviously, there can be no double counting.

## IV

We reverse the judgment of the Appellate Division dismissing plaintiff's LAD claim and remand the matter to the Law Division for further proceedings consistent with this opinion. After further discovery, the trial court may determine whether the plaintiff has established a pattern of continual injury sufficient to toll the statute of limitations on her claim against K–Mart and whether the presence of K–Mart as a defendant is required for a just disposition of plaintiff's claim.

POLLOCK, J., concurring and dissenting.

With one exception, I concur in the majority opinion. The exception is that I would affirm the Appellate Division's grant of summary judgment for K–Mart Stores (K–Mart).

In August 1990, K–Mart hired plaintiff, Nancy Wilson, to work in its Deptford location; in May 1992, K–Mart transferred her to Freehold. On January 10, 1994, K–Mart sold the assets of several stores, including the Freehold store, to a competitor, Wal–Mart

---

[3] There is no basis in the record to hold either Wal–Mart or K–Mart liable for punitive damages under the LAD. An employer can be held liable for punitive damages "only in the event of actual participation by upper management or willful indifference." *Rendine v. Pantzer,* 141 *N.J.* 292, 313–14, 661 A.2d 1202 (1995) (quoting *Lehmann v. Toys 'R' Us, Inc.,* 132 *N.J.* 587, 624–25, 626 A.2d 445 (1993)).

Stores (Wal–Mart). Wal–Mart continued to employ both Wilson and her supervisor, Rocco Gallo. Wilson claims that Gallo harassed her during their mutual employment by Wal–Mart and K–Mart. She also claims that Wal–Mart wrongly terminated her employment on March 4, 1994.

On June 9, 1994, Wilson filed a *pro se* complaint in the Division of Civil Rights (DCR) against Wal–Mart, but not Gallo or K–Mart. Thereafter she retained a lawyer. Because of delays in scheduling a "fact-finding hearing," her lawyer wrote a letter to the DCR on November 13, 1995. In the letter, he stated, "I am getting concerned that my client may lose her other rights because of the statute of limitations if this matter goes on much longer. My client was terminated on or about March 4, 1994."

On March 4, 1996, precisely two years from the date that Wal–Mart fired her, Wilson filed the within civil action in the Law Division. In addition to Wal–Mart, Wilson named as defendants Gallo and K–Mart. Sometime in May 1996, Wilson withdrew the DCR action against Wal–Mart.

The Law Division denied defendants' motions for summary judgment. The Appellate Division reversed. In reversing, the Appellate Division specifically ruled that both the exclusivity provision of *N.J.S.A.* 10:5–27 and the two-year statute of limitations pertaining to personal-injury actions, *N.J.S.A.* 2A:14–2, barred Wilson's claims against K–Mart.

The Appellate Division's ruling comports with *Montells v. Haynes,* 133 *N.J.* 282, 627 *A.2d* 654, which this Court decided on July 27, 1993, approximately six months before K–Mart sold the Freehold store to Wal–Mart. *Montells* held that a two-year period of limitations governs discrimination claims. Because of a lack of clarity in prior law, we further held that the decision should apply prospectively, "only to cases in which the operative facts arise after the date of the decision." *Id.* at 298, 627 *A.2d* 654. Underlying the prospective application of the decision were considerations of equity and fairness to claimants who may have

relied mistakenly on the six-year limitations period provided by *N.J.S.A.* 2A:14–1.

Here, the two-year bar of *N.J.S.A.* 2A:14–2 precludes Wilson's action against K–Mart. First, K–Mart sold the Freehold store to Wal–Mart two years and two months before Wilson instituted the within action. From that date forward, Wilson was no longer a K–Mart employee. *Montells*, which was decided before K–Mart's sale to Wal–Mart, made clear that the two-year statute of limitations applied to discrimination and harassment claims. It follows that the two-year statute clearly applied when K–Mart sold to Wal–Mart as well as when Wal–Mart fired Wilson. *See Standard v. Vas*, 279 *N.J.Super.* 251, 652 *A*.2d 746 (App.Div.1995). Second, Wilson's lawyer knew that the two-year statute applied to her claim. Both his letter of November 13, 1995, and his filing of the within action on the second anniversary of Wilson's termination reflect his actual knowledge of the applicability of the two-year bar. Finally, depriving Wilson of a claim against K–Mart will not leave her without a remedy. Wal–Mart, a company listed on the New York Stock Exchange, will remain as a defendant.

The majority's argument for "equitable tolling" of the statute of limitations because of the DCR's failure to act on Wilson's claim against Wal–Mart does not justify the late filing of her claim against K–Mart. Tolling the statute of limitations because of the pendency of the DCR action, according to the majority, comports with the purpose of the LAD. *See ante* at 270–72, 729 *A*.2d at 1010. Wilson, however, never named K–Mart or Gallo in her DCR action. Tolling a civil action against K–Mart because Wilson sued Wal–Mart in the DCR strikes me as both unreasonable and inequitable.

Contrary to the majority opinion, moreover, I find nothing "subtle and demanding," *ante* at 271, 729 *A*.2d at 1010, about determining when the statute of limitations began to run against K–Mart. The statute began to run no later than the date on which K–Mart ceased to be Wilson's employer. The date of the

sale of K–Mart's assets to Wal–Mart marks the last time that K–Mart had anything to do with plaintiff as her employer.

Finally, the argument that K–Mart's and Wal–Mart's alleged actions may constitute a single continuing tort is one of the majority's own creation. *See ante* at 273–74, 729 *A*.2d at 1011–12. The Court would bring K–Mart within the two-year limitation by placing its "final act," initiating the running of the statute, during Wal–Mart's tenure. Wilson never has argued that Wal–Mart's actions tolled the statute against K–Mart or that any relationship so connected the two employers that torts allegedly committed by each individually could constitute one continuous tort.

The cases cited by the majority supporting application of the continuing–tort doctrine to sexual harassment actions each concern a single employer, a long history of specifically alleged offenses, corroboration, and a record of reports to supervisors. *See, e.g., Paine v. Department of Mental Health Servs.*, No. C–92–2953–SC, 1995 WL 56588 (N.D.Cal. Feb.7, 1995); *Bustamento v. Tucker*, 607 *So*.2d 532 (La.1992). None addresses the novel aspect of the majority's decision in the present case: its finding that a sexual harassment tort asserted against one employer extends to another.

I would affirm the dismissal of the complaint against K–Mart.

PORITZ, C.J., and GARIBALDI, J., join in this opinion.

GARIBALDI, J., dissenting.

I disagree with the majority, and find that plaintiff, Nancy Wilson, is precluded, pursuant to *N.J.S.A.* 10:5–27, from filing a civil action under the New Jersey Law Against Discrimination, ("LAD" or the "Law"), *N.J.S.A.* 10:5–1 to –49, while an action based on the same grievance is pending before the Division of Civil Rights ("Division" or "DCR"). Additionally, I find that plaintiff's complaint against K–Mart is barred by the two-year statute of limitations set forth in *Montells v. Haynes*, 133 *N.J.* 282,

627 *A*.2d 654 (1993), because any purported reliance by plaintiff on the previous six-year statute of limitations was not reasonable.

## I.

Wilson was terminated by Wal–Mart on March 4, 1994. Subsequently, on June 9, 1994, plaintiff filed a *pro se* complaint against only Wal–Mart with the DCR. In that complaint, plaintiff alleged that Wal–Mart had discriminated against her on the basis of age and sex. Thereafter, she hired her present counsel, who filed an Appearance with the Division in August 1994. A fact-finding hearing was scheduled for October 25, 1994, at which time Wal–Mart requested a postponement. The hearing was rescheduled for April 6, 1995. Due to short notice, however, Wilson's counsel was unable to appear and requested a continuance that was granted. Although Wilson made numerous telephone calls and sent correspondence to the Division, she heard nothing back regarding a new hearing date. In a letter sent to the Division, which was dated November 13, 1995, her counsel expressed concern that his client might lose her rights because of the applicable statute of limitations. Subsequently, Wilson's counsel spoke with an individual from the Division who explained that, because of a backlog of cases, he was unable to advise or estimate when a fact-finding conference could be scheduled.

On March 4, 1996, without withdrawing her complaint from the Division, plaintiff filed an action under LAD in the Superior Court. The Law Division Complaint named Wal–Mart, and, for the first time, named Gallo and K–Mart as defendants. Subsequently, defendants K–Mart and Wal–Mart filed motions for summary judgment, seeking dismissal of the court action on the grounds that the exclusivity provision of LAD prohibited dual filings. In addition, K–Mart argued that summary judgment should be granted because Wilson's claim was barred by the two-year statute of limitations applicable to LAD actions. K–Mart further argued that plaintiff's claim should be dismissed because K–Mart was not her employer at the time of her termination.

The two motions were denied by the trial court. Subsequently, both K–Mart and Wal–Mart made separate motions for leave to appeal from the court's interlocutory order, which were granted. The Appellate Division summarily reversed the trial court's disposition and remanded this matter to the trial court for entry of judgment in favor of defendants, dismissing Wilson's complaint on the basis that her DCR complaint had not been dismissed prior to the filing of the Law Division complaint. In addition, citing *Montells v. Haynes, supra,* 133 *N.J.* 282, 627 A.2d 654, the Appellate Division found that Wilson's claims against K–Mart were barred by the applicable two-year statute of limitations. That conclusion was based on the fact that plaintiff's cause of action accrued on January 10, 1994, the last date that plaintiff had contact with K–Mart, and that she had not filed her complaint until March 4, 1996, two years and two months later.

Plaintiff filed two motions for reconsideration that were granted. However, the Appellate Division reaffirmed its prior ruling. Plaintiff filed a petition for certification, which we granted. 153 *N.J.* 402, 709 A.2d 795 (1998).

II.

*Exclusivity Provision of LAD, N.J.S.A. 10:5–27*

The LAD establishes a choice of remedies for complainants seeking redress for alleged discrimination. *N.J.S.A.* 10:5–27; *Hernandez v. Region Nine Hous. Corp.,* 146 *N.J.* 645, 652, 684 A.2d 1385 (1996). Complainants may pursue either an administrative remedy or a Superior Court remedy. *Aldrich v. Manpower Temp. Servs.,* 277 *N.J.Super.* 500, 504, 650 A.2d 4 (App.Div.1994), *certif. denied,* 139 *N.J.* 442, 655 A.2d 445 (1995); *Sprague v. Glassboro State College,* 161 *N.J.Super.* 218, 225, 391 A.2d 558 (App.Div.1978). Those remedies "are complementary," *Shaner v. Horizon Bancorp.,* 116 *N.J.* 433, 440, 561 A.2d 1130 (1989) (superseded by statute on other grounds as recognized by *Milazzo v. Exxon Corp.,* 243 *N.J.Super.* 573, 580 A.2d 1107 (Law Div.1990)),

but "mutually exclusive," *Hernandez, supra,* 146 *N.J.* at 652, 684 *A.*2d 1385.

The exclusivity provision of LAD, *N.J.S.A.* 10:5–27, provides in pertinent part:

[T]he procedure herein provided *shall, while pending, be exclusive;* and the final determination therein shall exclude any other action, civil or criminal, based on the same grievance of the individual concerned.

[ (Emphasis added).]

*See also N.J.S.A.* 10:5–13 (mandating that "[p]rosecution of such suit in Superior Court under [LAD] shall bar the filing of a complaint with the division or any municipal office during the pendency of such suit").

I conclude that the plain language of the statute as well as the legislative intent underlying the exclusivity provision compels the dismissal of Wilson's discrimination action. It is well-established that in construing a statute, one must first consider its plain language. *Merin v. Maglaki,* 126 *N.J.* 430, 434, 599 *A.*2d 1256 (1992). In light of that canon of statutory construction and looking solely to the language of *N.J.S.A.* 10:5–27, Wilson's Law Division complaint should have been dismissed. New Jersey courts have long recognized that a case is pending, in accordance with the ordinary meaning of that term, from " 'its inception until the rendition of final judgment.' " *State v. Duswalt,* 153 *N.J.Super.* 399, 405, 379 *A.*2d 1278 (App.Div.1977) (citation omitted); *see also Black's Law Dictionary* 1134 (6th ed.1990) (same); *cf. State v. Blazanin,* 298 *N.J.Super.* 221, 228, 689 *A.*2d 196 (App.Div.1997) (finding case, in criminal context, is pending from "initial prosecution of the offense up until final disposition on appeal").

Moreover, we have already interpreted the exclusivity provision at *N.J.S.A.* 10:5–27 to bar a judicial proceeding while an administrative proceeding is pending. *Fuchilla v. Layman,* 109 *N.J.* 319, 537 *A.*2d 652 (1988). The *Fuchilla* Court explained:

[A]n aggrieved person may *either* file an administrative complaint with the Director of the Division on Civil Rights or file a civil action in the Superior Court. Once the aggrieved party files a Superior Court action, however, he or she may not file an administrative complaint with the Division during the pendency of the suit.

> Likewise, *if the complainant first files with the Division, he or she may not file a complaint with the Superior Court while the administrative action is pending.*
> [109 *N.J.* at 336, 537 *A.*2d 652 (citations omitted, emphasis added).]

This Court reiterated that conclusion in *Shaner, supra,* stating that "an aggrieved victim of discrimination [has] the option of either filing an administrative complaint with the Director of the Division on Civil Rights or filing a civil action with the Superior Court.... [A] claimant may pursue only one remedial route at a time...." *Id.* at 440, 561 *A.*2d 1130. Lower courts have reached similar conclusions in other LAD cases. *See Aldrich, supra,* 277 *N.J.Super.* at 505, 650 *A.*2d 4 ("Once a forum is chosen, then, and while the procedure is pending another forum may not be pursued."); *Hermann v. Fairleigh Dickinson Univ.,* 183 *N.J.Super.* 500–04, 444 *A.*2d 614 (App.Div.), *certif. denied,* 91 *N.J.* 573, 453 *A.*2d 884 (1982)("Plaintiff could have elected to seek relief in the courts in the first instance. However, having chosen to pursue her grievance administratively, that chosen remedy is exclusive while it is pending and when it has been concluded.") (citations omitted); *Gray v. Serruto Builders, Inc.,* 110 *N.J.Super.* 297, 300, 265 *A.*2d 404 (Ch.Div.1970) (noting that statutory language of LAD's exclusivity provision "makes the jurisdiction conferred by the act exclusive ... when an administrative proceeding [either] is pending or has been concluded").

The courts' interpretation of the exclusivity provision, under the facts of the preceding cases, comports with the legislative intent underlying the 1979 amendment to LAD, which provided complainants with the alternative judicial forum to pursue discrimination claims. Assembly Judiciary, Law, Public Safety, and Defense Committee, *Statement to Senate Bill No. 3101,* at 1 (December 17, 1979) ("The bill makes explicit the right of complainants to initiate a suit alleging discrimination in Superior Court without the filing of a complaint with the Division of Civil Rights. If such a suit is filed, the complainant *may not* also file with the division while the suit is pending.") (emphasis added); *see also Shaner, supra,* 116 *N.J.* at 442–43, 561 *A.*2d 1130 (noting "the available legislative history shows that the primary reason for ... the 1979 amend-

ment of LAD [ ] was to reduce the agency backlog congestion and at the same time provide a judicial alternative that would be comparable to the administrative action so that the society's war against discrimination would not slacken").

One commentator explains that such a procedural system, employed in a minority of jurisdictions,[1]

> is designed to streamline the adjudication process and to remove at least some of the burdens imposed on courts and state . . . agencies alike. The central assumption underlying this approach is that a claimant will weigh the associated costs, available remedies, speed of disposition, procedural hurdles, and other considerations such as limitations periods, and will choose the path best suited to his or her type of claim under the specific circumstances. As a result, . . . the plaintiff in the election of remedies system will appear before only one body.
>
> [46 *Case W. Res. L.Rev.* at 147–48 (footnotes omitted).]

All of the parties concede that at the time that Wilson filed her Law Division complaint, the matter was still pending, but unheard, in the DCR. Nevertheless, Wilson contends that because there was no dispositive ruling at the administrative level, she was not restrained from filing a Law Division complaint. In support of her contention, Wilson relies on *Aldrich, supra,* 277 *N.J.Super.* 500, 650 *A.2d* 4, and *Hernandez, supra,* 146 *N.J.* 645, 684 *A.2d* 1385. Her reliance on both cases, however, is misplaced.

In *Aldrich, supra,* the plaintiff initially filed her discrimination complaint with the DCR. After eighteen months had elapsed without any action on the part of the agency, however, the plaintiff *withdrew* her complaint and filed a Law Division complaint based on the same acts and alleging the same LAD claims. *Aldrich, supra,* 277 *N.J.Super.* at 503, 650 *A.2d* 4. In response, the defendant moved for summary judgment, asserting that plaintiff chose the administrative remedy and was barred from pursuing a

---

[1] Included in this category of jurisdictions are New Jersey, New York, Ohio (for age discrimination only) and the District of Columbia. *See* N.Y. EXEC. LAW § 297(9) (McKinney 1993); OHIO REV. CODE ANN. § 4112.05 (Baldwin 1994); D.C. CODE ANN. § 1–2556(a) (1992); *see also* David C. Belt, *Election of Remedies in Employment Discrimination Law: Doorway Into the Legal Hall of Mirrors,* 46 *Case W. Res. L.Rev.* 145. 191 n. 97 (1995) [hereinafter Election of Remedies].

subsequent action in Superior Court. The trial judge granted the defendant's motion. The Appellate Division reversed. *Aldrich, supra,* 277 *N.J.Super.* at 506, 650 *A.*2d 4. In its reversal, the court emphasized:

> [W]e cannot agree [with the trial judge] that the Legislature has mandated that the mere exercise of a choice of forum to pursue a LAD complaint, is preclusive. *The focus, in terms of preclusive effect, is upon the "pendency" of a proceeding in the chosen forum and, critically, a final determination.*
>
> [*Id.* at 504, 650 *A.*2d 4 (emphasis added).]

Plaintiff relies upon the emphasized language above to support her argument that she was not barred from filing a Law Division complaint in this case because the DCR never made a final determination regarding her LAD claim. In *Aldrich,* however, the defendant contested the court's jurisdiction to consider the plaintiff's claim merely because she had filed a prior complaint with the Division. Unlike this case, the plaintiff in *Aldrich* withdrew that complaint before filing a civil action based upon the same grievance. The *Aldrich* court noted, "[t]here is nothing in the statute, then, which jurisdictionally prevented plaintiff here from filing her Law Division complaint *after withdrawing the administrative complaint before final disposition.*" 277 *N.J.Super.* at 505, 650 *A.*2d 4 (emphasis added). Moreover, the court recognized that preclusive effect attached upon the "pendency" of a proceeding in addition to a final determination. *Id.* at 504, 650 *A.*2d 4.

Likewise, the *Hernandez* Court addressed the preclusive language of *N.J.S.A.* 10:5–27. 146 *N.J.* at 657, 684 *A.*2d 1385. There, an employee brought an action against his employer, claiming national origin discrimination in violation of LAD. Prior to bringing that action, the employee received an adverse determination from the federal Equal Employment Opportunity Commission (EEOC) on his Title VII national origin discrimination claim. *Id* at 651, 684 *A.*2d 1385. The employer sought summary judgment, which the Law Division granted, reasoning that the employee's claim was barred by the adverse EEOC determination. *Ibid.* The employee appealed and the Appellate Division affirmed. This

Court granted certification and reversed. *Ibid.* The issue in that case, however, is inapposite to the one presented here. In *Hernandez, supra,* this Court held that the preclusive language of *N.J.S.A.* 10:5–27 did not apply because there was no prior DCR determination on the merits. *Id.* at 657, 684 *A.*2d 1385. By relying on *Aldrich, supra,* and *Hernandez, supra,* plaintiff "has confused the issue of claim preclusion with the issue of a bar by an election of remedies statute." *Harter v. GAF Corp.,* 150 *F.R.D.* 502, 515 n. 20. (D.N.J.1993). Although there was no final determination of plaintiff's claim by the DCR in this case, she did not comply with the procedural requirement of withdrawing her DCR complaint before filing an action in Superior Court.

The majority relies upon the public policy that LAD be interpreted liberally in favor of complainants in finding that Wilson's complaint should not be dismissed on a technicality. As this Court stated in *Hernandez,* "[t]he LAD embodies this State's strong public policy to fight 'discrimination against any of its inhabitants....'" 146 *N.J.* at 651, 684 *A.*2d 1385 (quoting *N.J.S.A.* 10:5–3); *see also Shaner, supra,* 116 *N.J.* at 438, 561 *A.*2d 1130 (noting remedial nature of LAD and its "overarching purpose of eradicating discrimination").

I agree that "[t]he [LAD] is remedial and should be read with an approach sympathetic to its objectives.". *National Org. for Women v. Little League Baseball, Inc.,* 127 *N.J.Super.* 522, 530, 318 *A.*2d 33 (App.Div.), *aff'd,* 67 *N.J.* 320, 338 *A.*2d 198 (1974). Nevertheless, this Court has also recognized that although "liberality of construction of remedial legislation is desirable, [the Court] cannot ignore the plain meaning of the language employed by the Legislature." *Singleton v. Consolidated Freightways Corp.,* 64 *N.J.* 357, 362, 316 *A.*2d 436 (1974); *see also Wormack v. Howard,* 33 *N.J.* 139, 142–43, 162 *A.*2d 846 (1960) (same); *In re Sussex County Mun. Utils. Auth.,* 198 *N.J.Super.* 214, 218, 486 *A.*2d 932 (App.Div.) ("It is clear, at least in New Jersey, that beneficence in the purposes of a remedial statute does not warrant liberality in construction which ignores the plain meaning of the

language employed by the Legislature."), *certif. denied,* 101 *N.J.* 267, 501 *A.*2d 934 (1985).

It was certainly understandable that plaintiff turned to a judicial action after her case lingered in the Division for nearly two years. "In choosing the alternative administrative mechanism by filing the complaint with the Division on Civil Rights, [complainants are] availing [themselves] of a means of redress normally swifter and less expensive than formal litigation." *Hermann, supra,* 183 *N.J.Super.* at 504–05, 444 *A.*2d 614; *see also Harter, supra,* 150 *F.R.D.* at 513. Nevertheless, to allow plaintiff to circumvent the procedural requirement of withdrawing her DCR complaint before filing a civil action will open the door to all other applicants who may jump from the agency to the court system in an attempt to accelerate their cases.

Plaintiff's filing an action before the DCR was not a prerequisite to her filing a civil action. Rather, such filing constituted an election by plaintiff to proceed administratively rather than judicially. *Fuchilla supra,* 109 *N.J.* at 336, 537 *A.*2d 652. Therefore, plaintiff's initial DCR complaint created the procedural prerequisite that she discontinue the administrative proceeding before instituting an action in Superior Court. Although plaintiff made that election before she had secured counsel and may not have completely understood the ramifications of her decision, even after plaintiff retained an attorney, her counsel did not withdraw the matter from the DCR until after filing the Law Division complaint.

Although there may be some exceptional cases where a plaintiff's filing a complaint while her actions is pending before the Division should be allowed, this is not one. This is just a run-of-the-mill case where plaintiff and her attorney did not read the clear wording of the statute. Plaintiff was aware of the statute of limitations running and had ample time to withdraw her complaint before the Division. Unfortunately, however, plaintiff's counsel did not withdraw the DCR complaint before filing the Law Division complaint.

## III.

### *Statute of Limitations*

This Court established a two-year statute of limitations applicable to all LAD actions in *Montells v. Haynes, supra,* 133 *N.J.* 282, 627 *A.2d* 654 (1993). However, recognizing that the state of the law regarding the applicable statute of limitations under LAD was "sufficiently murky," the Court held that the two-year limitation period applied only to cases in which the "operative facts" arose after July 27, 1993, the date of the *Montells* decision. *Id.* at 298, 627 *A.2d* 654. In contrast, those actions based on operative facts that arose before July 27, 1993, fall under the general six-year statute of limitations, *N.J.S.A.* 2A:14–1. *Montells, supra,* 133 *N.J.* at 297–98, 627 *A.2d* 654. Although I agree with Justice Pollock's dissent, *ante* at 276–78, 729 *A.2d* at 1013–14, that the operative facts did not arise prior to the date of the *Montells* decision, I find that even if the operative facts arose prior to the date of the *Montells* decision, any purported reliance by Wilson on the previous six-year statute of limitations was no longer reasonable more than two years after that decision. *See Standard v. Vas,* 279 *N.J.Super.* 251, 256, 652 *A.2d* 746 (App.Div.1995).

In *Standard, supra,* the plaintiff appealed after the Law Division entered summary judgment in favor of the defendants on limitations grounds. *Id.* at 252, 652 *A.2d* 746. That case involved the prospective application of the age-of-majority statute, which had lowered the age to eighteen. This Court held that the modified age applied prospectively in *Green v. Auerbach Chevrolet Corp.,* 127 *N.J.* 591, 606 *A.2d* 1093 (1992), which was decided on June 3, 1992. The plaintiff was injured at the age of nineteen in February 1991, and he commenced a personal injury suit when he was twenty-one in November 1993. The Appellate Division reversed the grant of summary judgment, finding that plaintiff filed his action well within the two-year limitations period. In *dicta,* however, the court noted that "in the future, we see no equitable or sound policy reason why youthful litigants who were injured prior to June 3, 1992 [the date of *Green* ], must invariably be given

until two years from their twenty-first birthday to commence suit *if, in fact, they have two years notice* of *Green.*" 279 *N.J.Super.* at 256, 652 *A.*2d 746 (emphasis added).

Based on that reasoning, the court suggested that the proper limit be "two years from the date of *Green,* two years from the date of the accident, or two years from attaining the age of eighteen, whichever is later." *Ibid.* Applying an analogous rationale, I find that Wilson was time-barred in this case because she had more than two years notice of this Court's decision in *Montells.* An examination of the law at the time of Wilson's filing of her DCR complaint would have revealed the *Montells* decision and the applicable two-year statute of limitations.

Furthermore, it is evident from the record that plaintiff's counsel knew about the two-year limitations period. In his letter, which was dated November 13, 1995, plaintiff's counsel stated: "I am getting concerned that my client may lose her other rights because of the statute of limitations if this matter goes on much longer. My client was terminated on or about March 4, 1994." Moreover, plaintiff's counsel noted plaintiff's termination date as the crucial date that his client's cause of action accrued. In addition, plaintiff's filing of her Law Division complaint on the two-year anniversary of her termination indicates that she was trying to file her complaint within that limitations period.

Nevertheless, Wilson now contends that the general six-year statute of limitations should apply because her case may involve operative facts that occurred prior to the date of the *Montells* decision. The reasoning of the Appellate Division in *Standard, supra,* resonates in this case, where there appears to be "no equitable or sound policy reason" why plaintiff or others in her position should continue to rely on the six-year statute of limitations where it is clear that plaintiff had notice of the *Montells* decision in plenty of time to ensure that her rights were preserved.

I find that a two-year statute of limitations applies to this case. That finding is equitable, given that the record establishes that it

is not plausible that plaintiff's counsel erroneously relied on the general six-year statute of limitations rather than the two-year period enunciated in *Montells*. Moreover, even if the Court declines to apply the two-year statute because of plaintiff's unreasonable reliance on the six-year statute of limitations, I recommend that the Court for the reasons stated by Justice Pollock in his dissent, *ante* at 276 – 78, 729 *A.*2d at 1013 – 14, find that the operative facts in this case occurred after the date of decision in *Montells*.

I would affirm the summary judgment in favor of K–Mart and Wal–Mart.

*For reversal and remandment in Part II*—Chief Justice PORITZ, and Justices HANDLER, POLLOCK, O'HERN, STEIN, and COLEMAN—6.

*For affirmance in Part II*—Justice GARIBALDI—1.

*For reversal and remandment in Part III*—Justices HANDLER, O'HERN, STEIN, and COLEMAN—4.

*For affirmance in Part III*—Chief Justice PORITZ and Justices POLLOCK and GARIBALDI—3.