NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-1108-15T2

KENNETH NICOLOSI and
DIANE NICOLOSI, his wife,

 Plaintiffs-Appellants,

v.

SMITH AND NEPHEW, INC.,

 Defendant-Respondent,

and

THE TRIAD GROUP,

 Defendant.
_______________________________

 Argued December 15, 2016 - Decided February 16, 2017

 Before Judges Lihotz, Hoffman and O'Connor.

 On appeal from Superior Court of New Jersey,
 Law Division, Burlington County, Docket No.
 L-1256-13.

 Gary D. Ginsberg argued the cause for
 appellants (Ginsberg & O'Connor, P.C.,
 attorneys; Adam M. Raditz, on the brief).

 Carla Rose Karp (Goodwin Procter, LLP) argued
 the cause for respondent (Glenn S. Kerner and
 Ms. Karp, on the brief).
PER CURIAM

 Plaintiff Kenneth Nicolosi appeals from an October 2, 2015

order denying his motion to reinstate a complaint against defendant

Smith & Nephew, Inc.1 Plaintiff filed this product liability

complaint on May 14, 2013, alleging he suffered infections after

using medical wipes manufactured by defendant. The parties agreed

to a temporary dismissal of the action pending negotiations. When

a settlement could not be reached, plaintiff moved to reinstate

the matter. Defendant objected, asserting the action was filed

beyond the applicable two-year statute of limitations. The trial

court agreed, and denied plaintiff's request to restore the action

to the trial calendar.

 On appeal, plaintiff argues the judge abused his discretion

and misapplied the law. Following our review, we affirm in part

and reverse and remand in part.

 The facts are not disputed. Plaintiff, who suffers from

significant medical conditions, used SKIN-PREP Protective Wipes

and REMOVE Universal Adhesive Remover Wipes, manufactured by

defendant, as a sterile skin preparation between 2007 and 2011.

On May 3, 2011, defendant recalled specific lot numbers of medical

1
 The complaint includes plaintiff's wife, Diane Nicolosi, as
a named plaintiff. Because her claims are derivative, we have
chosen to refer solely to Kenneth Nicolosi as the plaintiff in our
opinion.

 2 A-1108-15T2
wipes because they were improperly sterilized. Plaintiff's

medical supplier issued a recall notice. The notice instructed

customers to "immediately discontinue use and responsibly destroy

the affected products," which were manufactured dating back to

2007. The notice also requested completion of a "Recall Response

Form," which plaintiff completed on May 9, 2011. On the form,

plaintiff affirmed he identified "the recalled products in [his]

possession and . . . destroyed them."

 On August 1, 2011, defendant issued a second notice,

identifying additional product lot numbers of medical wipes

recalled, also improperly sterilized.2 Plaintiff received the

recall notice from his medical supplier, which included

instructions to discontinue use and destroy the products. This

notice was also accompanied by a "Recall Response Form," which

plaintiff did not complete and return.

 Plaintiff filed an eleven-count complaint on May 14, 2013,

two years and five days following his execution of the May 9, 2011

recall notice.3 In each count of the complaint, plaintiff alleged

he used defendant's products "[p]rior to May 2011," and defendant's

2
 The lot numbers identified in the May 3, 2011 recall notice
are not included in the record. However, there is no dispute the
batch numbers of similar products were different.
3
 The complaint also named as defendants the Triad Group and
fictitious parties as manufacturers and distributors.

 3 A-1108-15T2
failure to sterilize the products made them not reasonably fit,

suitable, and safe for their intended use, and not of merchantable

quality, free of defects in design. Further, the complaint alleged

the products breached express and implied warranties, as they were

defective. As a consequence, plaintiff suffered numerous

infections requiring treatment and hospitalizations.

 Service upon defendant was effectuated on June 17, 2013.

Defendant did not file responsive pleadings. Instead, the parties

entered into a four-month tolling agreement, open to extension,

which provided plaintiff would voluntarily dismiss his complaint

and release his medical records, and defendant would preserve all

defenses. A notice of dismissal of the action, without prejudice,

see R. 4:37-1, was filed on July 18, 2013. On November 28, 2013,

the court dismissed the action as to all defendants for lack of

prosecution. See R. 1:13-7.

 Plaintiff gathered his medical records and retained an

expert, who issued a report. These documents along with a demand

were transmitted to defendant on April 2, 2015. Negotiations were

unsuccessful in resolving the dispute.

 On July 28, 2015, plaintiff moved to reinstate his complaint.

Defendant objected. Defendant argued plaintiff's request was

filed significantly beyond the four-month tolling period, and

plaintiff did not show extraordinary circumstances caused the

 4 A-1108-15T2
delay. Also, defendant asserted plaintiff's claims were time-

barred.

 During argument on the motion, plaintiff explained the delay

in seeking reinstatement resulted from the non-responsiveness of

plaintiff's medical providers. Defendant acknowledged it had no

basis to challenge the claimed delay regarding securing

plaintiff's medical records. The judge agreed and found plaintiff

successfully satisfied the exceptional circumstances standard

allowing reinstatement.

 Addressing defendant's argument the action could not proceed

because the two-year statute of limitations had run on May 9,

2013, plaintiff urged he also used products listed in the August

1, 2011 recall that caused harm. He stated the second recall

extends the limitations period and allowed him to present all

claims. The judge disagreed. In its October 2, 2015 order, the

court declined to reinstate the complaint, concluding the claims

were barred by the statute of limitations set forth in N.J.S.A.

2A:14-2. Plaintiff timely filed this appeal.

 Our review of a trial court's decision to grant or deny a

motion to reinstate litigation required us to determine whether

the judge abused his or her discretion. Weber v. Mayan Palace

Hotel & Resorts, 397 N.J. Super. 257, 262 (App. Div. 2007). The

arguments on appeal do not implicate the judge's finding that

 5 A-1108-15T2
reinstatement would be appropriate, but for the failure to timely

file the complaint. We limit review to whether the action was

time-barred, which is a legal question, subject to plenary review.

Town of Kearny v. Brandt, 214 N.J. 76, 91 (2013).

 "A product liability action is defined as 'any claim or action

brought by a claimant for harm caused by a product, irrespective

of the theory underlying the claim, except actions for harm caused

by breach of an express warranty.'" Cornett v. Johnson & Johnson,

211 N.J. 362, 386-87 (2012) (quoting N.J.S.A. 2A:58C-1(b)(3)).

Permissible theories of liability include manufacturing defect,

defective design, or failure to warn through adequate warnings or

instructions. Ibid. (citing N.J.S.A. 2A:58C-2). "The standard

for liability is that the product is 'not reasonably fit, suitable

or safe for its intended purpose . . . .'" Ibid. (quoting N.J.S.A.

2A:58C-2).

 Plaintiff first argues his complaint timely asserts claims

for injuries resulting from using wipes identified in the August

1, 2011 recall notice, which are not barred. Defendant argues

plaintiff was noticed of the problem with the wipes in May;

therefore, the time to file commenced on May 9, 2011, and expired

before he filed his complaint.

 The facts belie defendant's argument. The May 3, 2011 recall

notice identified distinctly different batches of defendant's

 6 A-1108-15T2
product than the August 1 recall notice. The latter recall did

not merely reiterate products identified in the first recall;

instead, it added new batches of the product, manufactured after

March 2010. We reject defendant's contention the May 3, 2011

recall put plaintiff on notice all of defendant's products were

possibly defective; rather, the notice limited the defective

products to the identified batches. In this regard, we agree the

August 1, 2011 notice may support a separate cause of action.

 The complaint does not state a cause of action specifically

linked to products listed in the August 1, 2011 recall. Rather,

the complaint repeatedly asserts plaintiff used defendant's

products "[p]rior to May 2011." Reviewing plaintiff's factual

allegations indulgently, as we must, Printing Mart-Morristown v.

Sharp Elecs. Corp., 116 N.J. 739, 746 (1989), we conclude such

language could encompass products listed in the August 1, 2011

recall because they were manufactured after March 2010. Plaintiff

did not receive notice of the defect in these products until August

1, 2011.

 At this stage, we do not evaluate whether plaintiff can prove

medical causation sufficient to survive summary judgment. We

conclude only the complaint alleges claims arising within two

years of the filing date of the complaint.

 7 A-1108-15T2
 We add these additional comments on other issues raised on

appeal. Plaintiff argues "the statute of limitations does not

begin to run until the wrongful action ceases," citing Wilson v.

Wal-Mart Stores, 158 N.J. 263, 272 (1999), and suggests:

 Once [plaintiff] received the May 9, 2011
 letter recalling certain tainted products, the
 tortious and wrongful action by [defendant]
 did not cease. Plaintiff continued to
 unknowingly use the tainted products
 [manufactured] by [respondent] through the
 August 3, 2011 recall which included tainted
 products . . . . Clearly, there is a material
 issue as to whether the tainted products
 involved in the August 2011 recall were the
 source of [plaintiff's] infections.

 We reject plaintiff's attempt to extend the "continuing tort

doctrine" to these facts. The Supreme Court recognized the

continuing tort theory for discrimination and harassment claims,

which "are often based on continuing violations."

 Hostile environment claims are different in
 kind from discrete acts. Their very nature
 involves repeated conduct. The "unlawful
 employment practice" therefore cannot be said
 to occur on any particular day. It occurs
 over a series of days or perhaps years and,
 in direct contrast to discrete acts, a single
 act of harassment may not be actionable on its
 own. Such claims are based on the cumulative
 [e]ffect of individual acts.

 [Green v. Jersey City Bd. of Educ., 177 N.J.
 434, 447 (2003) (quoting Shepherd v. Hunterdon
 Developmental Ctr., 174 N.J. 1, 20 (2002)).]

 8 A-1108-15T2
 No authority extends the doctrine to medical torts or personal

injury claims. The discovery doctrine, not the continuing tort

doctrine, triggers the statute of limitations in personal injury

actions. Cornett v. Johnson & Johnson, 414 N.J. Super. 365 (App.

Div. 2010) ("New Jersey courts apply a 'discovery rule' . . . .

The bases of a claim for personal injury are the plaintiff's

awareness that he or she sustained an injury, and the understanding

that the injury may involve another party's fault.").

 As demonstrated above, plaintiff's theory of liability is

based on discrete use of specific wipes on certain days. The

discovery rule was triggered by the May 3 and August 1, 2011 recall

notices. Therefore, any injuries resulting from use of the wipes

listed in the May 3, 2011 recall are barred as untimely.

 We also reject as lacking merit plaintiff's argument equity

should permit the claims to stand because defendant suffered no

prejudice. See R. 2:11-3(e)(1)(E). We reinstate the complaint

to allow only consideration of claims resulting from wipes

referenced in the August 1, 2011 recall notice. We remand the

matter for further proceedings related to these claims.

 Affirmed in part and reversed and remanded in part.

 9 A-1108-15T2