11 A.3d 376 (2010)
417 N.J. Super. 574
Edward STONEY, Plaintiff-Appellant,
v.
Joseph P. McALEER and Aberdeen Township, Defendants-Respondents.
Docket No. A-1187-09T2
Superior Court of New Jersey, Appellate Division.
Argued September 29, 2010.
Decided December 21, 2010.
Anthony J. Brady, Jr. argued the cause for appellant.
Patricia M. Reilly argued the cause for respondent Joseph P. McAleer (Wolff, Helies, Duggan, Spaeth & Lucas, attorneys; Ms. Reilly, on the brief).
Lenox, Socey, Formidoni, Brown, Giordano, Cooley & Casey, attorneys for respondent *377 Aberdeen Township, join in the brief of respondent Joseph P. McAleer.
Before Judges WEFING, PAYNE and BAXTER.[1]
The opinion of the court was delivered by
WEFING, P.J.A.D.
In separate orders, the trial court granted summary judgment to defendants Joseph P. McAleer ("McAleer") and Aberdeen Township ("the Township"), finding that plaintiff's complaint was barred by the statute of limitations. The trial court also denied plaintiff's subsequent motion for reconsideration with respect to McAleer. Plaintiff has appealed from these orders. After reviewing the record in light of the contentions advanced on appeal, we affirm in part, reverse in part, and remand for further proceedings.
Both plaintiff and his wife have been declared disabled due to physical infirmities, and both have been active for many years in the field of equal rights for the disabled. At plaintiff's deposition in this matter, he named ten municipalities, including the Township, that he had sued, alleging a failure to comply with various provisions of the Americans with Disabilities Act of 1990 ("ADA"). 42 U.S.C.A. §§ 12101 to 12213. Not all of plaintiff's disputes with the Township have involved issues of access for the disabled. He has also been involved in litigation with the Township with regard to the Open Public Records Act ("OPRA"), N.J.S.A. 47:1A-1 to -13, as well as a dispute with the Township about his posting a political flyer on a telephone pole. Prior to the incidents underlying this litigation, he had been involved in four or five prior suits against the Township.
During the course of his involvement in public issues, plaintiff met and became friendly with McAleer, who was also active in public matters. In 2004, McAleer became the construction code official for the Township and, in an effort to assist him in that position, plaintiff would advise McAleer if he saw any properties that were not being maintained in accordance with the Township's code.
In 2004, plaintiff had had several meetings with officials of the Township about particular issues of disability access. Plaintiff was of the view that the Township was not moving with sufficient speed to correct the problems he had brought to its attention, and he was planning to file suit against the Township. Before any complaint was filed, plaintiff received three separate visits from McAleer, who advised plaintiff that he had two commercial vehicles on his property in violation of the Township's ordinance. McAleer also told him that he had debris on his property that had to be cleaned up. In addition, plaintiff said that McAleer also said that he had been instructed to issue summonses to plaintiff if plaintiff proceeded with his plans to sue the Township. Plaintiff insisted the trucks were not commercial vehicles, that the "debris" to which McAleer pointed was construction material being used on his garage, and that he fully intended to go ahead with the planned litigation. McAleer denied ever making such a statement to plaintiff.
On May 5, 2004, shortly after McAleer's last visit, plaintiff received two summonses-one for failing to maintain the exterior of his property in a clean, safe and sanitary condition, free from accumulations of *378 rubbish and trash, in violation of § 301.1 of the Township's property maintenance code, and one for maintaining more than one commercial vehicle on his property, in violation of § 25:5-12.b.1 of the Township's land use ordinance. In July 2004, plaintiff's wife, Carmena Stoney, filed suit against the Township, alleging that its failure to provide appropriate access to the disabled was a violation of the ADA and New Jersey's Law Against Discrimination ("LAD"), N.J.S.A. 10:5-1 to -49, and plaintiff assisted her with this suit.
Plaintiff's trial on the two summonses he received from McAleer was held in the Township's municipal court nearly a year after they were issued. The municipal court judge found plaintiff guilty of the two ordinance violations. Plaintiff appealed to the Law Division, which reversed these convictions for failure of the municipal court judge to make adequate factual findings. The matters were remanded and transferred to a different municipal court for trial. Plaintiff was again convicted. Plaintiff appealed to the Law Division and was again found guilty. Plaintiff appealed to this court, and we affirmed. State v. Stoney, No. A-2538-08T4, 2010 WL 162062 (App.Div. Nov. 23, 2009).
In February 2007, prior to completion of the appellate process, plaintiff filed suit against McAleer and the Township, alleging that the prosecution against him in municipal court was being pursued in retaliation for his assistance to his wife in her suit against the Township; this, he contended, violated the LAD's prohibition against such retaliatory tactics, N.J.S.A. 10:5-12d, and the New Jersey Constitution's guarantee of free speech and the right to petition the government. N.J. Const. art. I, ¶¶ 6, 18. In 2009, defendants filed separate motions for summary judgment, contending that plaintiff's suit was untimely because it was filed more than two years after the summonses in question had been issued. The trial court agreed and dismissed plaintiff's complaint. This appeal followed.
Plaintiff's argument on appeal, in essence, is that the issuance of these summonses and his prosecution in municipal court constituted a continuing wrong under the principles enunciated by the Supreme Court in Wilson v. Wal-Mart Stores, 158 N.J. 263, 272, 729 A.2d 1006 (1999) (noting that "[w]hen an individual is subject to a continual, cumulative pattern of tortious conduct, the statute of limitations does not begin to run until the wrongful action ceases."). Starting from that premise, plaintiff initially contends that the statute of limitations did not start to run until completion of his municipal court trial, and because his complaint in this action was filed within two years of that date, it could not be considered barred by the statute of limitations.
Claims that are asserted under the LAD, as is plaintiff's, are subject to a two-year limitations period. Montells v. Haynes, 133 N.J. 282, 292, 627 A.2d 654 (1993). This rule is not inexorable, however; the continuing violation doctrine provides an alternate analysis. Our Supreme Court has recognized the applicability of the continuing violation doctrine to LAD claims. Shepherd v. Hunterdon Developmental Ctr., 174 N.J. 1, 803 A.2d 611 (2002) (applying the continuing violation doctrine to a hostile work environment claim); Wilson, supra, (holding successor corporation could be liable for sexual harassment and discrimination experienced at predecessor corporation if the conduct continued at the successor); Alliance for Disabled in Action, Inc. v. Renaissance Enters., Inc., 371 N.J.Super. 409, 853 A.2d 334 (App.Div.2004) aff'd o.b., 185 N.J. 339, 886 A.2d 629 (2005) (holding that statute of limitations on LAD claims *379 with respect to failure to comply with New Jersey's Barrier Free Subcode, N.J.A.C. 5:23-7.1 to -7.31, did not start to run until completion of large residential condominium project). The underlying purpose of the continuing violation doctrine is "to permit a plaintiff to include acts `whose character as discriminatory acts was not apparent at the time they occurred.'" Hall v. St. Joseph's Hosp., 343 N.J.Super. 88, 101, 777 A.2d 1002 (App.Div.2001), certif. denied, 171 N.J. 336, 793 A.2d 715 (2002) (quoting Doe v. R.R. Donnelley & Sons Co., 42 F.3d 439, 446 (7th Cir.1994)). Cf. Alexander v. Seton Hall University, 204 N.J. 219, 8 A.3d 198 (2010).
It is not intended, however, to permit a party to "aggregate[e] ... discrete discriminatory acts for the purpose of reviving an untimely act of discrimination that the victim knew or should have known was actionable." Roa v. Roa, 200 N.J. 555, 569, 985 A.2d 1225 (2010). Here, plaintiff was aware from the outset that these summonses may have been issued in retaliation for his insistence upon pursuing claims against the Township.
In Shepherd, the Court recognized that the continuing violation doctrine is appropriate in the context of "a continual, cumulative pattern of tortious conduct," id. at 18, 803 A.2d 611 (citing Wilson, supra), as opposed to the occurrence of "discrete discriminatory acts." Id. at 19, 803 A.2d 611 (citing Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 108, 122 S.Ct. 2061, 2070, 153 L.Ed.2d 106, 120 (2002)). In the case of the latter, "[e]ach [such] incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable" wrong, triggering its own limitations period. Ibid. (quoting Nat'l R.R. Passenger Corp., supra, 536 U.S. at 114, 122 S.Ct. at 2073, 153 L.Ed.2d at 122).
In support of his contention that his lawsuit should be deemed timely under the continuing violation theory, plaintiff relies upon Whelan v. Abell, 953 F.2d 663 (D.C.Cir.1992), and our decision in Alliance, supra. We are satisfied that neither supports plaintiff's position. The litigation in Whelan arose out of a failed business venture in which the parties had been involved. 953 F.2d at 666-67. In the wake of that failure, the defendants filed a series of lawsuits against the plaintiffs, alleging the plaintiffs had made misrepresentations during the course of their negotiations. One of the defendants' suits was dismissed before trial, the second, after a bench trial. Id. at 667. When these suits were concluded, the plaintiffs filed suit against the defendants, asserting claims for tortious interference with prospective economic advantage, breach of fiduciary duty, wrongful involvement in litigation, abuse of process and malicious prosecution. Ibid. One of the arguments the defendants put forth to the claim of interference with prospective economic advantage was that the plaintiffs had no "concrete business opportunities," id. at 673, at the time the defendants filed suit against them. It was in the context of that argument that the court made the statement, upon which plaintiff relies, "that a lawsuit is a continuous, not an isolated event." Ibid. The question of whether the plaintiffs' suit in Whelan was timely filed was simply not before the court.
Nor do we think that Alliance provides any support for plaintiff's position before us. Our conclusion in that case, that the statute of limitations began to run when the project was completed, not when it was commenced, was founded on the nature of the development itself, which "was built on a continuous basis, with no significant interruption in construction activity." 371 N.J.Super. at 423, 853 A.2d 334. We fail to see any analogy between that *380 ongoing process of real estate planning and development and plaintiff's claims here.
We are compelled, however, to note our disagreement with the analysis adopted by the trial court, which viewed the trial that occurred in municipal court as a continuing effect of an earlier violation, and thus subject to the earlier limitations bar. There is nothing in the record before us that would indicate a continuous period of litigation activity between these parties from the time McAleer issued these summonses until the municipal court trial commenced. Everything in the record before us supports the view that these were two discrete acts, each subject to its own period of limitations.
We recognize that the prosecution in municipal court could not have occurred unless the summonses were earlier issued. The obverse does not necessarily follow, however, that is, the fact that the summonses were issued did not inevitably result in the municipal court trial. The Township could have, for any number of reasons, decided to forego this prosecution in its discretion. The summonses and the trial were separate events, with separate harms and, as a result, separate limitations periods.
The Second Circuit adopted a similar analysis in Washington v. County of Rockland, 373 F.3d 310 (2d Cir.2004). In that case, the plaintiffs, African-American correction officers, brought claims alleging discriminatory and retaliatory conduct in the form of bringing meritless disciplinary charges against them and maintaining these charges in subsequent proceedings. In that case, the plaintiffs alleged that their discrimination claims were timely because the institution of the charges and the ultimate prosecution constituted a continuous violation, such that the statute of limitations began to run when the prosecution was completed, not when the charges were brought. The court rejected this argument, stating:
Here, the conduct in question was [defendant Rockland County Sheriff's Department's] decision to file disciplinary charges against plaintiffs. Such conduct is clearly a single act, discrete in nature. Although RCSD could have revisited its decision after the charges had been filed, doing so would not have turned the act of filing charges into a continuous or ongoing policy or practice. The alleged discrimination occurred when RCSD undertook the individual act of initiating disciplinary charges against each plaintiff. Because RCSD's prosecution of the charges to ultimate disposition is wholly separable from the act of initiating the charges, we reject plaintiffs' contention that this series of separate acts should be characterized as an ongoing policy of continuous discrimination sufficient to toll the applicable statute of limitations.
[Id. at 318.]
We apply that reasoning here and conclude that the part of plaintiff's claim that rests upon McAleer issuing these two summonses in 2004 is barred by the statute of limitations, and we affirm that portion of the trial court's order. His prosecution in municipal court, however, was a discrete separable event, and plaintiff filed his complaint within two years of that event. We thus reverse that portion of the trial court's order.
Plaintiff presents several other arguments in support of his position, including the assertion that his LAD claim should be viewed as analogous to a claim for abuse of process and that the trial court erred in denying his motion to amend his complaint. We disagree. A claim for abuse of process rests not upon the motive that led to issuance of the process but some further act used to *381 coerce or oppress the plaintiff. Hoffman v. Asseenontv.Com, Inc., 404 N.J.Super. 415, 962 A.2d 532 (App.Div.2009).
The orders under review are affirmed in part, reversed in part, and the matter is remanded to the trial court for further proceedings in accordance with this opinion.
NOTES
[1] Judge Payne did not participate in the oral argument of this appeal. The attorneys have consented to her addition to this opinion.