**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0227-24

STACI FLEISCHMANN,

      Plaintiff-Appellant,

v.

NEW JERSEY DEPARTMENT OF
THE TREASURY, DIVISION OF
PENSIONS AND BENEFITS,
NIQUISHA MUNKO, and LUAN
BARNETT,

      Defendants-Respondents.

_____

         Submitted January 7, 2026 – Decided February 4, 2026

         Before Judges Mayer and Paganelli.

         On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Docket No. L-0846-21.

         McLaughlin Stauffer & Shaklee, PC, attorneys for appellant (Richard J. Shaklee, on the briefs).

         Marshall Dennehey, PC, attorneys for respondent New Jersey Department of the Treasury, Division of Pensions and Benefits and Niquisha Munko (Leonard C. Leicht and Walter F. Kawalec, III, on the brief).

Flahive Burke, Attorneys at Law, LLC, attorneys for respondent Luann Barnett (Timothy E. Burke, of counsel and on the brief).

PER CURIAM

Plaintiff Staci Fleischmann appeals from an August 14, 2024 order granting summary judgment in favor of defendants New Jersey Department of the Treasury, Division of Pensions and Benefits (Division), Niquisha Munko, and Luann Barnett (collectively, defendants). We affirm.

We recite the facts from the summary judgment motion record. In 2000, plaintiff started working as a pension counselor with the Division's call center. At the time, plaintiff suffered from Crohn's disease and migraines. Over the course of the next four years, plaintiff took four separate leaves of absence for illness-related issues. After these leaves of absence, plaintiff returned to the Division's call center. In 2004, plaintiff requested a transfer within the Division to accommodate her "stress and medical conditions." The Division granted the transfer request.

Plaintiff then worked in Division's withdrawals department for one year before being transferred to the death claims department. Plaintiff worked in the Division's death claims department for the next ten years. During her time with the Division's death claims department, plaintiff took several leaves of absence

2

for illness-related issues. The time periods for these leaves of absence ranged from one month to ten months.

In 2010, while working in the Division's death claims department, plaintiff was disciplined for "chronic absenteeism." In 2011, plaintiff requested a medical accommodation limiting heavy lifting, climbing, pushing, pulling, bending, and twisting and allowing her to walk three to five minutes every hour. The Division granted these requests.

In 2013, at her request, plaintiff started working in the Division's purchases department. Plaintiff requested this transfer because she "received a threatening letter" and "did not feel comfortable" continuing to work in the Division's death claims department.

As a result of a car accident in or around 2014, plaintiff reported she "suffered a traumatic brain injury that would become exacerbated in moments of stress or hostility." Around late 2014 or early 2015, during a leave of absence, plaintiff transferred to the Division's enrollments department.

In 2015, plaintiff took a seven-month leave of absence for ankle surgery after suffering a fall. Upon her return, plaintiff requested that she not be assigned tasks involving heavy lifting. The Division responded that plaintiff's job duties did not require any heavy lifting. Plaintiff took another six-month

3

leave of absence for further ankle surgery in late 2015.  In 2016, two months after returning to work following the second ankle surgery, plaintiff took an additional four-month leave for her chronic illnesses.

Upon plaintiff's transfer to the Division's enrollments department, Barnett became plaintiff's direct supervisor.  Barnett and plaintiff had worked together previously in the Division's call center.  Plaintiff had no issues with Barnett when they worked in the call center.[1]

In a June 2016 email, Barnett informed an employment relations coordinator at the Division that plaintiff's "attendance was sporadic and disruptive to the work unit" and plaintiff "required continuous training and follow up" upon returning from each leave of absence.  Barnett asked that plaintiff be re-assigned to another department.  Barnett and someone from the Division's human resources department discussed whether plaintiff should be reassigned, submit to an independent medical evaluation, or if no action should be taken.  During this meeting, Barnett and the Division's human resources

---

[1]  Barnett was subsequently promoted, and Munko became plaintiff's direct supervisor.  Plaintiff and Munko also knew each other from working in the Division's call center.  Plaintiff reported no issues with Munko when they previously worked together.

A-0227-24

department representative allegedly discussed "not approving any further leaves and forcing plaintiff's hand."

In early 2017, plaintiff requested multiple workplace accommodations, including "chang[ing] into slippers from shoes at work." The Division approved this requested accommodation for a six-month period and asked plaintiff to provide a doctor's note in support of the request. Plaintiff also requested "a mandatory lunch break[,] . . . breaks of fifteen minutes every two hours[,] and a lighting assessment." The Division responded that the requested break schedule was already standard and a doctor's note would be necessary for a lighting assessment.

In March 2017, plaintiff filed an Equal Employment Opportunity Commission (EEOC) complaint against the Division, alleging disability discrimination. Munko and Barnett received notice of the EEOC complaint in May 2017.

In April 2017, after plaintiff provided the requisite doctors' notes, Munko and Barnett were notified that the Division approved plaintiff's medical accommodations. Munko and Barnett were informed plaintiff: (1) "must wear slipper[s]/sneaker[s] indefinitely"; (2) "cannot lift more than [ten] pounds at a time; must avoid activities that require repetitive bending, pushing, or pulling;

A-0227-24

avoid periods of sustained sitting that exceed [twenty] minutes or standing more than [ten] minutes"; (3) be allowed "more time to learn and perform new tasks";[2] and (4) required "a change in the lighting in her workstation and regular schedule for eating." The following month, plaintiff took a two-week leave for her chronic illnesses. In May 2017, plaintiff was again formally disciplined for "chronic absenteeism."

In June 2017, plaintiff filed a grievance to be "to be reassigned to a work unit free of discrimination and hostility[] or at least to a different supervisor." Two months later, plaintiff filed another grievance to "allow [her] to take flexible lunches, per her physician's orders, or to end the disparate treatment in the workplace altogether."

In September 2017, plaintiff's union representative requested plaintiff be transferred to another department. In October 2017, plaintiff required another ankle surgery, resulting in a one-year leave of absence. Plaintiff's union representative followed up regarding the requested transfer, explaining the transfer was required due to the "humiliation and violations of [plaintiff's]

---

[2] Plaintiff stated she did not have any difficulty performing her job duties. Rather, she claimed she "just needed some clarification or direction" to confirm whether she was performing tasks correctly.

A-0227-24

[Health Insurance Portability and Accountability Act] rights by the supervisors and Chief in her current section."

The Division discussed a potential transfer that same month. It also considered plaintiff's requested workplace accommodations. The Division asked for medical documentation related to plaintiff's requested accommodations to determine a suitable transfer for plaintiff.

In January 2018, plaintiff's union representative again asked about plaintiff's requested transfer. In response, the Division requested additional medical documentation regarding plaintiff's work capabilities. The Division subsequently informed plaintiff there were four lateral positions for which she was qualified. However, the Division noted it "could not force a supervisor to take her if no one wanted her."

In May 2018, plaintiff again requested a transfer "due to the continued hostile work environment." In November 2018, plaintiff requested she "be allowed to wear sneakers indefinitely at work." In April 2019, plaintiff requested she be allowed unrestricted bathroom use. In May 2019, plaintiff requested a transfer multiple times at the recommendation of her neurologist due to the "hostile work environment and lack of change" which affected her health.

7

In June 2019, plaintiff took a ten-month leave of absence for her chronic illnesses. During the seven-month period that she worked in 2019, the Division formally disciplined plaintiff for falsifying medical records.

As of April 2020, plaintiff worked remotely on a full-time basis. Plaintiff requested a medical accommodation to continue remote work throughout 2020 and 2021. However, plaintiff alleged that she did not receive a proper laptop to work remotely. Munko attributed any laptop issues to plaintiff's incompetence.

Plaintiff received a formal transfer to the Division's correspondence unit in October 2022.

Having detailed plaintiff's work history at the Division, we summarize plaintiff's legal claims against defendants. Plaintiff claimed she experienced a hostile work environment while under the direct supervision of Munko and Barnett. According to plaintiff, her supervisors made numerous comments belittling her disabilities. Plaintiff further claimed Munko and Barnett addressed her in "hostile and condescending tones." She specifically claimed they criticized her excessive use of sick time.

Plaintiff also contended that Munko and Barnett denied her privileges which they afforded to plaintiff's coworkers. For example, plaintiff asked to keep her cellphone on her desk because she was expecting an important call

from a doctor. According to plaintiff, Barnett denied the request and stated the cellphone must be kept on the floor or in her desk per Division policy. Plaintiff claimed her coworkers were permitted to use their cellphones without any restriction. Additionally, plaintiff claimed she was not permitted to leave her desk to get coffee or breakfast, unlike her coworkers.

Plaintiff maintained her coworkers avoided socializing because they feared being disciplined by Munko and Barnett for interacting with plaintiff. Plaintiff claimed these actions by Munko and Barnett constituted a hostile work environment.

On April 22, 2021, plaintiff filed a complaint against defendants, alleging disability discrimination, failure to provide reasonable accommodations, and retaliation. Plaintiff asserted she suffered from "two autoimmune disorders in addition to chronic intractable migraine disease and asthma," the Division knew about her conditions, and the conditions qualified as disabilities under the New Jersey Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -50. She further alleged defendants declined to afford her reasonable accommodations, despite her documented medical conditions. In this regard, plaintiff highlighted the Division's purported denial of her transfer request and refusal to permit her to

keep her cellphone on her desk. Plaintiff further claimed defendants retaliated against her after she filed the EEOC complaint and union grievances.

After discovery, the Division and Munko moved for summary judgment. Barnett also filed a motion for summary judgment. Plaintiff opposed the motions.

During oral argument, the Division and Munko argued plaintiff failed to plead her allegations with the requisite specificity to warrant relief. Additionally, they argued plaintiff's claims were barred by the two-year statute of limitations and the lack of chronological specificity in support of her allegations precluded them from determining which conduct fell within the two-year period of limitations. Further, the Division and Munko asserted plaintiff's allegations failed to demonstrate their violation of the LAD.

Barnett raised similar arguments in her motion for summary judgment, contending plaintiff "presented no evidence that . . . can seriously be considered the contribution to a hostile work environment." Further, Barnett argued "there [wa]s no evidence she aided and abetted [as] she did not engage in a kind of active and purposeful conduct or provide knowing and substantial assistance in any other violation of the LAD." Barnett also argued there was no evidence of

her involvement in plaintiff's requests for accommodations or any evidence of plaintiff's disparate treatment.

In an August 14, 2024 order and attached written statement of reasons, the motion judge granted the motions for summary judgment. Regarding Barnett's motion, the judge explained plaintiff failed to provide "any reasonable means of identifying the persons responsible for 'chastising' plaintiff for her use of sick time or evaluating the conduct of . . . Barnett and Munko without knowledge of what they specifically stated to plaintiff." The judge stated the conduct plaintiff attributed to Munko and Barnett failed to illustrate the nature of the conduct itself. The judge determined plaintiff's claims amounted to "bare conclusions and subjective feelings." After examining the specific instances of Barnett's alleged conduct as described by plaintiff, the judge found the cited instances did not rise to actionable conduct or were unrelated to plaintiff's disability.

The judge also found Barnett accorded reasonable accommodations to plaintiff as allowed under the Division's policy. The judge concluded the dispute concerning the location of plaintiff's cellphone on her desk was a "simple workplace policy disagreement" rather "than a failure to accommodate [a] disability." Further, the judge found no causal connection between plaintiff's purported transfer request delays and any conduct attributable to Barnett. Thus,

11

the judge granted summary judgment to Barnett on plaintiff's failure to accommodate claim.

Regarding plaintiff's retaliation claim against Barnett, the judge found plaintiff did "not provide any evidence suggesting that . . . Barnett's conduct was the result of [p]laintiff's filed grievances, EEOC complaint, and complaints to" human resources. The judge concluded Barnett's awareness of plaintiff's grievances and complaints, on the basis of the proffered evidence, did not motivate Barnett to retaliate against plaintiff.

In ruling on the motion for summary judgment filed by the Division and Munko, the judge reiterated his finding that plaintiff's claims lacked the requisite specificity to support a hostile work environment claim. Regarding plaintiff's failure to accommodate claim, the judge held the Division and Munko "participated in good faith in an active dialogue with [p]laintiff and accommodated most, if not all, of her accommodation requests." Regarding plaintiff's request to transfer, the judge explained plaintiff continued to perform the essential duties of her job notwithstanding any transfer and the transfer request was not necessarily related to plaintiff's disabilities. In considering plaintiff's cellphone request, the judge concluded the issue was unrelated to plaintiff's disability. Regarding plaintiff's retaliation claim against the Division

12

and Munko, the judge determined the claim was barred by the two-year statute of limitations because the conduct occurred before March 2019.  He also found plaintiff's retaliation claims lacked the required specificity to survive summary judgment.

The judge granted defendants' motions for summary judgment and dismissed plaintiff's complaint with prejudice.

On appeal, plaintiff argues her claims before April 22, 2019, were timely under the continuing violation doctrine.  Additionally, plaintiff contends the judge erred in granting summary judgment on her hostile work environment claim because the cumulative impact of defendants' discriminatory actions created such an environment.  Plaintiff further asserts the judge applied an overly narrow definition of "reasonable accommodation" in dismissing her failure to accommodate claim.  She also contends the judge erred in dismissing her retaliation claim and declining to address her aiding and abetting claim.  We reject these arguments.

We review a trial court's order granting or denying "a motion for summary judgment de novo, applying the same standard used by the trial court."  Samolyk v. Berthe, 251 N.J. 73, 78 (2022) (citing Woytas v. Greenwood Tree Experts, Inc., 237 N.J. 501, 511 (2019)).  A trial court may grant a motion for summary

13

judgment "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged." R. 4:46-2(c). "An issue of fact is genuine only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact." Ibid. Thus, when reviewing the grant of a motion for summary judgment, the appellate court considers "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).

We first address plaintiff's argument that the judge erred in determining her claims related to defendants' conduct prior to April 22, 2019, were time barred. We disagree.

"The statute of limitations for claims arising under the LAD is two years." Shepherd v. Hunterdon Developmental Ctr., 174 N.J. 1, 17 (2002). Plaintiff filed her complaint on April 22, 2021. The judge held: "[T]o the extent [p]laintiff br[ought] claims under the LAD stemming from conduct carried out

by any of the defendants prior to April 22, 2019, such claims are time barred by the LAD's two-year statute of limitations."

Plaintiff relies on the continuing violation doctrine to preserve her claims arising prior to April 22, 2019. "[T]he continuing violation doctrine provides an exception to [the LAD's] limitations period." Id. at 18. Under the doctrine, "[w]hen an individual is subject to a continual, cumulative pattern of tortious conduct, the statute of limitations does not begin to run until the wrongful action ceases." Ibid. (quoting Wilson v. Wal-Mart Stores 158 N.J. 263, 272 (1999)).

"The underlying purpose of the continuing violation doctrine is 'to permit a plaintiff to include acts "whose character as discriminatory acts was not apparent at the time they occurred."'" Stoney v. McAleer, 417 N.J. Super. 574, 579 (App. Div. 2010) (quoting Hall v. St. Joseph's Hosp., 343 N.J. Super. 88, 101 (App. Div. 2001)) (internal quotation marks omitted). The continuing violation doctrine "is not intended . . . to permit a party to 'aggregate[e] . . . discrete discriminatory acts for the purpose of reviving an untimely act of discrimination that the victim knew or should have known was actionable.'" Ibid. (alteration in original) (quoting Roa v. Roa, 200 N.J. 555, 569 (2010)).

Plaintiff argues her claims asserting a hostile work environment, failure to accommodate, and retaliation should be analyzed under the continuing

violation doctrine and, because some of defendants' conduct occurred after April 22, 2019, the judge erred by declaring her allegations regarding conduct prior to April 2019, were time barred.

Having reviewed the record, we are satisfied plaintiff's argument relies on an aggregation of conduct, rendering the continuing violation doctrine inapplicable. In her complaint, plaintiff recounted alleged discriminatory conduct by defendants prior to April 2019, and therefore knew or should have known the asserted conduct was actionable at that time. Because plaintiff could have timely asserted her claims regarding defendants' alleged conduct before April 2021, the judge did not err in rejecting the continuing violation doctrine to save plaintiff's claims related to conduct prior to April 22, 2019. We are satisfied the judge correctly concluded claims related to conduct before April 22, 2019, were barred by the two-year statute of limitations under the LAD.

We next address plaintiff's argument that the judge erred in granting summary judgment on her hostile work environment claim. We reject this argument.

The LAD's "overarching purpose is to eradicate discrimination in society" and "'to protect the public's strong interest in a discrimination-free workplace.'" Savage v. Twp. of Neptune, 257 N.J. 204, 216 (2024) (first citing Nini v. Mercer

Cnty. Cmty. Coll., 202 N.J. 98, 115 (2010); and then quoting Lehmann v. Toys 'R' Us, Inc., 132 N.J. 587, 600 (1993)).  However, "the LAD is not intended to be 'a "general civility" code' for conduct in the workplace," and "discourtesy or rudeness should not be confused" with discriminatory conduct.  Heitzman v. Monmouth Cnty., 321 N.J. Super. 133, 147 (App. Div. 1999) (alterations omitted) (quoting Faragher v. City of Boca Raton, 524 U.S. 775, 787-88 (1998)).

> [W]hether an environment is "hostile" or "abusive" can be determined only by looking at all the circumstances,' which 'may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a merely offensive utterance; and whether it unreasonably interferes with an employee's work performance.
>
> [Ibid. (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993)).]

To establish a hostile work environment claim, a plaintiff must demonstrate "that the complained-of conduct (1) would not have occurred but for the employee's protected status, and was (2) severe or pervasive enough to make a (3) reasonable person believe that (4) the conditions of employment have been altered and that the working environment is hostile or abusive."  Shepherd, 174 N.J. at 24 (citing Lehmann, 132 N.J. at 603-04).  To constitute "severe or pervasive" conduct, a plaintiff must demonstrate "a reasonable person would

17

believe that the conditions of employment have been altered and that the working environment is hostile." Ibid. (citing Lehmann, 132 N.J. at 604).

Plaintiff claims the judge erred in determining defendants' conduct did not create a hostile work environment. Specifically, she contends defendants engaged in "a cumulative pattern of comments," creating a hostile work environment. Plaintiff also asserts she experienced disparate treatment from defendants because of her disability, resulting in her being isolated from her coworkers. Relying on Shepherd, plaintiff argues "[t]he singling out of an individual for 'repeated comments' and 'cold treatment' can form the basis for a hostile work environment claim under the []LAD."

Based on the evidence presented with the summary judgment motions, plaintiff failed to demonstrate the requisite "severe or pervasive" conduct to support her hostile work environment claim. Plaintiff's proffered evidence demonstrated that Munko and Barnett were dissatisfied with plaintiff's work performance. The supervisors' dissatisfaction with plaintiff stemmed from their frustration with plaintiff's job efforts rather than any disability discrimination. "A supervisor's coldness, lack of civility, or failure to provide employees with Christmas gifts or party invitations, although inhospitable and boorish, cannot qualify as 'severe or pervasive' conduct under the LAD." Shepherd, 174 N.J. at

18

25. In reviewing the evidence, defendants' conduct reflected exasperation with plaintiff's chronic absences rather than her disability. Under these facts, plaintiff failed to demonstrate defendants' conduct was causally related to her disability status. Therefore, defendants were entitled to summary judgment on plaintiff's hostile work environment claim.

We turn to plaintiff's argument the judge erred in rejecting her reasonable accommodation claim against defendants. We disagree.

"An employer must make a reasonable accommodation to the limitations of an employee or applicant who is a person with a disability." N.J.A.C. 13:13-2.5(b). Under the LAD, "an employer's duty to accommodate extends only so far as necessary to allow 'a disabled employee to perform the essential functions of his job,'" but "'[i]t does not require acquiescence to the employee's every demand.'" Bosshard v. Hackensack Univ. Med. Ctr., 345 N.J. Super. 78, 91 (App. Div. 2001) (quoting Vande Zande v. Wis. Dep't of Admin., 851 F. Supp. 353, 362 (W.D. Wis. 1994)). "Once a handicapped employee has requested assistance, it is the employer who must make the reasonable effort to determine the appropriate accommodation." Tynan v. Vicinage 13 of Superior Ct., 351 N.J. Super. 385, 400 (App. Div. 2002) (citing Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 311 (3d Cir. 1999)). When a plaintiff seeks to prove their

19

employer failed to reasonably accommodate their disability, they must demonstrate they:

> (1) "qualif[y] as an individual with a disability, or [are] perceived as having a disability, as that has been defined by statute"; (2) "[are] qualified to perform the essential functions of the job, or w[ere] performing those essential functions, either with or without reasonable accommodations"; and (3) that defendant "failed to reasonably accommodate [their] disabilities."
>
> [Royster v. N.J. State Police, 227 N.J. 482, 500 (2017) (quoting Victor v. State, 203 N.J. 383, 410 (2010)).]

Plaintiff argues defendants failed to reasonably accommodate her disability despite the Division's receipt of medical evidence documenting her conditions. Specifically, she alleges defendants failed to make a reasonable effort to accommodate her because they did not participate in good faith discussions.

Based on our review of the record, the Division accorded plaintiff a variety of reasonable accommodations addressed to her disability. The Division extensively accommodated plaintiff by providing a lighting change at her work station, footwear changes while at the office, and frequent medical leaves. Plaintiff failed to proffer any evidence she was unable to perform the essential functions of her job despite the Division's reasonable accommodations. Nothing

20

in the record demonstrates that the Division denied any of plaintiff's requests which were supported by medical documentation.

Moreover, the judge found defendants "participated in good faith in an active dialogue with [p]laintiff and accommodated most, if not all, of her accommodation requests." On this record, we are satisfied the Division went to great lengths to accommodate plaintiff's disability and offered her to transfer positions best suited to her abilities. Thus, the judge did not err in finding defendants made a reasonable effort to accommodate plaintiff's disability.

We also reject plaintiff's argument that the "essential functions of the job" requirement under the second prong of the Royster test is too narrow to accomplish the LAD's purpose. Plaintiff contends "the duty to accommodate goes beyond those things absolutely necessary for an employee to perform an essential function of the position."

Even if we were to apply the broader definition of "reasonable accommodation" under Caraballo v. City of Jersey City Police Department, 237 N.J. 255, 268 (2019), as plaintiff argues, rather than the "essential functions" standard, we are satisfied summary judgment would still be appropriate.

The judge found plaintiff provided no evidence that her job performance was impeded by her disability notwithstanding the Division's accommodations.

21

None of plaintiff's medical professionals opined she was unable to perform her job due to her disability. Rather, her doctors explained plaintiff "would no longer benefit from working" in certain jobs based on her supervisors' behavior. While the statements by plaintiff's doctors' demonstrated plaintiff would have benefitted from a transfer, those statements did not indicate how plaintiff was unable to "remain at work without [her] physical handicaps impeding [her] physical job performance." Jones v. Aluminum Shapes, Inc., 339 N.J. Super. 412, 427 (App. Div. 2001). Under these facts, the judge correctly concluded defendants reasonably accommodated plaintiff's disability even under the broader definition of "reasonable accommodation" as opposed to the "essential function" test.

We next consider plaintiff's argument the judge erred in granting summary judgment on her retaliation claim. We disagree.

"[T]he LAD operates not only to fight discrimination wherever it is found, but to protect those who assist in rooting it out." Quinlan v. Curtiss-Wright Corp., 204 N.J. 239, 260 (2010). Employers are prohibited from retaliating against employees who seek to enforce the LAD. N.J.S.A. 10:5-12(d).

To establish a prima facie case of retaliation under the LAD, a plaintiff must show they were "1) . . . engaged in a protected activity known to the

defendant; 2) [they were] thereafter subjected to an adverse employment decision by the defendant; and 3) there was a causal link between the two." Romano v. Brown & Williamson Tobacco Corp., 284 N.J. Super. 543, 548-49 (App. Div. 1995). In this context, an "adverse employment decision" could include an "employee's loss of status, a clouding of job responsibilities, diminution in authority, disadvantageous transfers or assignments, and toleration of harassment by other employees." Mancini v. Twp. of Teaneck, 349 N.J. Super. 527, 564 (App. Div. 2002).

Plaintiff argues defendants' failure to accommodate her transfer request in a timely fashion, coupled with Munko and Barnett's alleged harassment after the filing of her EEOC complaint and union grievances, satisfies the first two prongs of a retaliation claim. It is undisputed Munko and Barnett were aware of plaintiff's complaints. Additionally, accepting certain of plaintiff's allegations as true, some of defendants' alleged conduct could constitute adverse employment decisions. However, the judge focused his analysis of plaintiff's retaliation claim on the third prong, finding plaintiff "failed to present evidence of causation" because merely showing Munko and Barnett were aware of the complaints "d[id] not mean that [they] w[ere] then motivated to retaliate against [p]laintiff."

23

Plaintiff asserts the judge erred in reaching this conclusion because "causal connection may be demonstrated by evidence of circumstances that justify an inference of retaliatory motive." Plaintiff argues the judge should have inferred defendants' retaliatory motive from the alleged factual circumstances. See Romano, 284 N.J. Super. at 550.

Despite defendants' awareness of plaintiff's complaints, "the mere fact that [an] adverse employment action occurs after [the protected activity] will ordinarily be insufficient to satisfy the plaintiff's burden of demonstrating a causal link between the two." Young v. Hobart W. Grp., 385 N.J. Super. 448, 467 (App. Div. 2005) (alterations in original) (quoting Krouse v. Am. Sterilizer Co., 126 F.3d 494, 503 (3d Cir. 1997)). "Only where the facts of the particular case are so 'unusually suggestive of retaliatory motive' may temporal proximity, on its own, support an inference of causation." Ibid. (quoting Krouse, 126 F.3d at 503).

Here, plaintiff failed to provide any "unusually suggestive" facts that would warrant the judge finding temporal proximity to satisfy the causation element for a retaliation claim. Thus, the judge did not err in finding plaintiff's causation theory a "bridge too far" to satisfy the third prong of her retaliation claim.

Lastly, we consider and reject plaintiff's argument the judge erred in granting summary judgment on her aiding and abetting claim.

The LAD does not allow "any person" to "aid, abet, incite, compel or coerce" actions forbidden under its provisions and "such conduct may result in personal liability." Tarr v. Ciasulli, 181 N.J. 70, 83 (2004) (quoting N.J.S.A. 10:5-12(e)). Because supervisors are not considered employers under the LAD, aiding and abetting is the principal claim by which they could be liable for acts of discrimination. See Cicchetti v. Morris Cnty. Sheriff's Off., 194 N.J. 563, 594 (2008). To establish a prima facie case for aiding and abetting under the LAD, a plaintiff must show:

> (1) the party whom the defendant aids . . . perform[ed] a wrongful act that cause[d] an injury; (2) the defendant . . . [was] generally aware of his role as part of an overall illegal or tortious activity at the time that he provide[d] the assistance; [and] (3) the defendant . . . knowingly and substantially assist[ed] the principal violation.
>
> [Tarr, 181 N.J. at 84 (fifth alteration in original) (quoting Hurley v. Atl. City Police Dep't, 174 F.3d 95, 127 (3d Cir. 1999)).]

Plaintiff argues "inferences may be drawn to allow for a jury review as to whether Munko and Barnett acted actively and purposefully to aid and abet the Division in the claims regarding the hostile work environment and retaliation."

25

She presumes defendants are responsible for "illegal and tortious activity" under the LAD. However, because the judge concluded defendants' conduct did not constitute "wrongful acts" under the LAD, the judge did not err in rejecting plaintiff's aiding and abetting claims.

To the extent we have not addressed any of plaintiff's remaining arguments, they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-0227-24